## IN THE UNITED STATE DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| CHRISTOPHER RHODES, Individually and on Behalf of All Others Similarly Situated, | Case No. 6:20-cv-927 |
| Plaintiff | **CLASS REPRESENTATION** |
| v. | |
| EMBRY-RIDDLE AERONAUTICAL UNIVERSITY, INC., | **JURY TRIAL DEMANDED** |
| Defendant | |

### CLASS ACTION COMPLAINT

Plaintiff Christopher Rhodes, individually and on behalf of all other similarly-situated persons, brings this class action complaint against Embry-Riddle Aeronautical University, Inc. Mr. Rhodes makes the following allegations upon personal knowledge as to his own acts and upon information and belief and his attorneys' investigation as to all other matters.

### NATURE OF THE ACTION

1. This is a class action brought on behalf of Mr. Rhodes and other similarly-situated persons ("the Class"), who paid tuition and fees to Embry-Riddle University ("the University" or "Embry-Riddle"). Plaintiff and the Class (i) did not receive their bargained-for educational and other services and experiences, for which they paid; and (ii) have not been refunded a properly prorated portion of their tuition and fees after Embry-Riddle abruptly ceased providing such services to students during the spring of 2020 due to the spread of Coronavirus Disease 2019 ("COVID-19").

2. As a result of Defendant's wrongful acts and unfair business practices alleged herein, Mr. Rhodes and the Class have systematically been denied, and therefore seek: (i) a proper, prorated refund or reimbursement for the unused services for which they paid in the form of

various university fees; and (ii) a proper, prorated refund or reimbursement for the decreased value of the education they received as a result of classes transitioning from in-person/on-campus instruction to an entirely remote, virtual learning format.

## PARTIES

3.   Plaintiff Christopher Rhodes is a resident of Daytona Beach, Florida. Mr. Rhodes is an undergraduate student studying aeronautics at Embry-Riddle Aeronautical University. He is scheduled to receive his Bachelor of Science in aeronautics in 2022.

4.   Defendant Embry-Riddle Aeronautical University, Inc., is a private nonprofit corporation incorporated under the laws of the State of Florida (FEI/EIN Number 59-0936101). Its principal place of business is located at in 1 Aerospace Boulevard, Daytona Beach, Florida 32114, and it may be served with process through its registered agent Charles W. Sevastos at 600 S. Clyde Morris Blvd., Daytona Beach, FL 32114-3900.

5.   Defendant owns and operates Embry-Riddle Aeronautical University in Daytona Beach, Florida, and Embry-Riddle Aeronautical University in Prescott, Arizona.

## JURISDICTION AND VENUE

6.   **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds $5,000,000, excluding interest and costs, and this is a class action in which certain of the Class members and Defendant are citizens of different states.

7.   **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because Defendant has continuous and systematic general business contacts in this State and District. Defendant's principal place of business is located within this District and it could be said to be "at home" in this District and Division.

8.   **Venue.** Venue is proper in this judicial District under 28 U.S.C. §1391(b)(1)-(2) because Defendant resides in this District and is a citizen of the State of Florida and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

9.     Embry-Riddle offers certificate, associate, bachelor's, master's, and Ph.D. programs in fields related to aerospace and aeronautics including engineering, business and aviation.[1] Embry-Riddle "offers a first-rate education" through on-campus programs that are "complete with classrooms and labs, dorms and clubs, sporting events, and performances" and online programs "that feature state-of-the-art online technology that offers you the flexibility of learning whenever and wherever you want."[2]

10.     Embry-Riddle is an accredited, private, nonprofit university in Florida with campuses in Prescott, Arizona, and 125 other locations worldwide. Embry-Riddle enrolls approximately 33,000 undergraduate and graduate students across a range of both on-campus and online programs.

11.     The Daytona Beach campus enrolls approximately 6,000 undergraduate and 600 graduate students, including Plaintiff.

12.     Embry-Riddle offers a hands-on, experiential curriculum including a wide array of labs and simulators, a private flight line, and fleet of aircraft.[3]

13.     Embry-Riddle charges students fees and tuition for their education and for on-campus services and facilities.

14.     All students pay an array of fees including one or more of the following: SGA fee, student facilities fee, health service fee, tech fee, ATC lab fee, and an undergrad payment plan fee.

15.     Defendant maintains records enabling it to identify and quantify by student all fees paid for the Spring and Summer 2020 terms at all Embry-Riddle institutions.

---

[1] ERAU, *Degrees and Programs*, https://daytonabeach.erau.edu/degrees
[2] ERAU, *Get to Know Our Campuses*, https://erau.edu/about
[3] ERAU, *This is Daytona Beach*, https://daytonabeach.erau.edu/about

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

16.   The specific tuition rate that a student pays varies not only by program, but also by whether the student enrolls in online or on-campus instruction. In 2020, for example, a student enrolling in an *online* undergraduate program pays $429 in tuition per credit hour, for a total typical degree cost of over $51,000;[4] while that student's colleague in the Daytona Beach *on-campus* programs pays $1,519 in tuition per credit hour, for a total typical degree cost exceeding $180,000.[5]

17.   Defendant maintains records enabling it to identify and quantify by student all tuition paid for the Spring and Summer 2020 terms at all Embry-Riddle institutions.

18.   Despite variations in program tuition costs, one thing is consistent across the board—for undergraduate and graduate programs that are offered both online and on-campus, the on-campus versions are significantly more expensive than their online counterparts. Undergraduate students in on-campus programs pay over three times more than their online peers.

19.   Students enrolled in on-campus classes pay more, but they also get more, including access to facilities, equipment, events, and other on-campus services and opportunities.

20.   Like all universities, Embry-Riddle does not merely sell credit hours and diplomas as one would sell some common consumer commodity. It sells an experience—one enriched both personally and academically through hands-on experiential learning, social interaction, and involvement with faculty and with other students as images from its website and student catalog graphically illustrate.[6]



---

[4] ERAU *Cost and Tuition*, https://worldwide.erau.edu/admissions/cost-tuition
[5] ERAU, *Tuition and Estimated Costs: Fall 2020*, https://daytonabeach.erau.edu/admissions/estimated-costs
[6] ERAU, *Life on our Daytona Beach Campus*, https://daytonabeach.erau.edu/campus-life




21.    Embry-Riddle boasts a high-tech, interactive campus featuring labs, simulators, a flight line, and aircraft fleet. [7]








---

[7] ERAU, *Degrees and Programs*, https://daytonabeach.erau.edu/degrees; https://www.eraueagles.com/facility/details/4-eagle-gym; https://prescott.erau.edu/campus-life/culture

22.   Thousands of Embry-Riddle students were guaranteed such benefits and experiences when Plaintiff and Class members paid tuition to Embry-Riddle for on-campus, rather than online, courses. However, since mid-March 2020, these students have been denied the full benefits for which Plaintiff and Class members paid.

23.   In response to COVID-19, Embry-Riddle announced around March 13, 2020, its intention to "migrate most classes online for students at both campuses, effective March 18 until at least April 6."[8] It later announced it would continue online delivery of on-campus programs and instructions through the summer term for both locations.[9]

24.   Despite suspending all in-person class and labs since March 18, forcing students who signed up and paid for on-campus programs into less valuable online versions, and denying students access to facilities, resources, and services for which their fees and tuition paid, the University has not offered to refund any amount of tuition or fees to Plaintiff or the Class.

25.   Although Embry-Riddle has received nearly $7 million in public funding through the Coronavirus Aid, Relief, and Economic Security Act (CARES) Act,[10] Defendant refuses to refund or reimburse Plaintiff and the Class any portion of the fees and tuition they paid for in-person education and services that they are no longer being provided.

26.   Embry-Riddle offers both undergraduate and graduate programs, as well as certificates in everything from aeronautics to human security and resilience. Some programs are offered only on-campus, others are only online, and, for a number of programs, students can choose to take their classes either online or on-campus:

---

[8] P. Barry Butler, *To Keep Students Safe, Embry-Riddle Migrates Most Classes Online*, Embry-Riddle Aeronautical University News, March 13, 2020, https://news.erau.edu/headlines/embry-riddle-announces-summer-courses-for-residential-campus-students;Embry-Riddle; Aeronautical University, *Embry-Riddle Continues to Enhance Health Precautions*, https://news.erau.edu/headlines/embry-riddle-continues-to-enhance-health-precautions
[9] ERAU, *Embry-Riddle Announces Summer Courses for Residential Campus Students*, https://news.erau.edu/headlines/embry-riddle-announces-summer-courses-for-residential-campus-students
[10] Miami Herald, *How much money will you and your college get from Congress' coronavirus relief bill?* April 12, 2020, https://www.miamiherald.com/news/local/education/article241925316.html

> Advancing technology-enhanced education with affordability, academic quality and student success at the forefront is what sets Embry-Riddle apart…. Our technology allows students to have access to experiences similar to a traditional campus setting from virtually anywhere.[11]

27.   Embry-Riddle's tuition is relatively high for a private, nonprofit university, a fact that the University justifies for two reasons. First, Embry-Riddle says that its graduates will be gainfully employed in their relevant field within a year of graduation:

> You expect results. We deliver them. Embry-Riddle graduates go places. They land jobs quickly and become leaders of industry. Your degree will get your foot in the door with some of the world's top employers, and your campus contacts will be there to help along the way.[12]

28.   Second, Embry-Riddle justifies its high undergraduate and graduate tuition because of the hands-on, experiential learning offered to students:

> Your classrooms: The lab, the cockpit, the simulator. At Embry-Riddle, you'll get **hands-on experience** from the time you get to campus. Explore the skies. Develop a rocket launch system. Run conflict scenarios in a situation room. Design airlines, networks, and fleets to maximize profitability (emphasis in original).[13]

29.   For instance, Embry-Riddle advertises state-of-the-art facilities and equipment, and opportunities for students to develop the technical skills, industry connections, and experience, necessary to thrive in their fields. In an April 13, 2020 video uploaded on Embry-Riddle's YouTube Channel, the University claimed "We Are Hands On":

> At Embry-Riddle Aeronautical University we learn by doing: Building rockets, race cars, flying, designing, building and fixing aircraft, experiments, exercises and projects in all of our areas of global security, scientific, aviation and aerospace studies. Here's a look at the hands-on experience with the College of Business, College of Arts and Sciences, College of Aviation and the College of Engineering.[14]

---

[11] ERAU, Online Technology for the Modern student, https://worldwide.erau.edu/online-learning/online-technology-for-the-modern-student
[12] ERAU, Learn then Earn, https://erau.edu/
[13] ERAU, Go Sky-High, https://erau.edu/
[14] ERAU, We Are Hands On, April 13, 2020, https://www.youtube.com/watch?v=iZ8O1tObJ5w

30.   Throughout its website, Embry-Riddle portrays students working in simulators, aircraft, labs, and much more.

 

31.   Embry-Riddle's on-campus programs are marketed as providing incredible opportunities for students to develop their real-world knowledge, technical skills and industry know-how, all while using professional equipment and facilities.

32.   For example, in the Department of Applied Aviation Sciences, "facilities include high-definition simulators for air traffic control, a crash lab where students get to experience forensic investigation of aircraft accidents, and a meteorology lab with specialized equipment for broadcasting and forecasting. These programs ensure students graduate with hands-on experience using highly advanced technology."[15] Meanwhile, in the Department of Aviation Maintenance Science, "students get plenty of real-life experience in the department's Emil Buehler Aviation Maintenance Science Building. The 48,000-square-foot building is entirely dedicated to the training of airframe and powerplant technicians, with two of its three floors dedicated to labs. The department also has a hangar, turbine engine test cells, and several aircraft."[16] According to the Department of Aerospace Engineering "Embry-Riddle is known throughout the aviation and aerospace industry as the top provider of hands-on, pragmatic

---

[15] ERAU, College of Applied Aviation Sciences, https://daytonabeach.erau.edu/college-aviation/applied-aviation-sciences
[16] ERAU, Department of Aviation Maintenance Science, https://daytonabeach.erau.edu/college-aviation/aviation-maintenance-science

education, producing engineers who are ready to solve the real-world problems encountered by the aerospace industry."[17] Indeed, the University features a marketing video on its website titled "We Are Hands On," a key selling point to prospective students.



33.   The Prescott, Arizona, campus features an Aerospace Experimentation and Fabrication Building (AXFAB): "From classroom instruction to **hands-on projects**, the Aerospace Experimentation and Fabrication Building is **always active with students**."[18]



34.   Of course, programs offered exclusively online do not provide this level of access to equipment, facilities, technology, and other resources. It is no doubt for this reason that, for its online undergraduate and graduate programs, Embry-Riddle charges significantly less— sometimes hundreds of dollars less per credit hour—for tuition.

---

[17] ERAU, Department of Aerospace Engineering, https://daytonabeach.erau.edu/college-engineering/aerospace
[18] ERAU, https://prescott.erau.edu/campus-life/facilities (emphasis added)

35.   By paying more in tuition, on-campus students at Embry-Riddle expect to get more. In addition to being able to take more hands-on, interactive coursework like that described above, they also can use Embry-Riddle's instructional aircraft in their combined Daytona Beach and Prescott Fleet," "134 total Embry-Riddle Simulators,"[19] and nearly 100 labs.[20]

36.   The on-campus experience is not limited to academic opportunities. Embry-Riddle touts the rich and robust social experience students can expect from an on-campus education:

> There are over 160 student organizations on the Daytona Beach Campus. The department encourages participation in sports clubs, special interest groups, Greek life (sororities and fraternities), honor societies, aviation clubs, military organizations, and religious organizations. The Department of Student Union provides support for all these organizations in addition to assisting students in starting new student organizations. Involvement on campus develops skills in social responsibility, strong group dynamics, leadership, communication, management, budgeting, and decision making.[21]

37.   Students who choose on-campus programs in Daytona can participate in a variety of campus clubs and organizations, including the ROTC, Flight Team, club sports, fraternity and sorority life, leadership development programs, student government and volunteer networks.[22]

38.   Students at the Prescott, Arizona, campus can choose from many similar organizations, and the University lauds the rich experience campus life provides:

> While learning is critical, the college experience is so much more than the classes you take. That's why **the Embry-Riddle Prescott campus culture caters to so many diverse interests.** No matter what you're into, you'll find it here. Martial arts, outdoor adventure, Greek Life, gaming, swing dancing, hang gliding, and amateur radio-- just to name a few. ERAU is a mile high in the Bradshaw Mountains of central Arizona where flying conditions are pristine and the land's natural beauty is spectacular. **With world-class facilities and robust faculty support, Embry-Riddle Prescott offers a dynamic campus experience** in the classic sense. You'll be proud to call Prescott Campus your home.[23]

---

[19] ERAU, https://erau.edu/
[20] ERAU, Campus Labs and Facilities, https://daytonabeach.erau.edu/about/labs
[21] ERAU, https://catalog.erau.edu/archives/2018-2019/daytona-beach/student-life/
[22] ERAU, Campus Life, https://daytonabeach.erau.edu/campus-life
[23] ERAU, https://prescott.erau.edu/campus-life (emphasis added)

39.   In short, unlike their peers enrolled exclusively in online courses, students who take on-campus courses have unique access to professional facilities and equipment, face-to-face classroom instruction; state-of-the art labs and simulators; in-person networking events; guest lectures, and the opportunity for a rich social experience, among other things.

40.   In exchange for the promise of an in-person education and on-campus services and opportunities, Plaintiff paid more than $17,000 in tuition and more than $1,100 in fees for the 2020 Spring term.

| Charges | | | | |
| --- | --- | --- | --- | --- |
| Date Posted | Term | Item Description | Amount | Currency |
| 11/01/2019 | Daytona/Prescott 2020 Spring | SGA Fee | 150.00 | USD |
| 11/01/2019 | Daytona/Prescott 2020 Spring | Student Facilities Fee | 150.00 | USD |
| 11/01/2019 | Daytona/Prescott 2020 Spring | Health Service Fee | 164.00 | USD |
| 11/01/2019 | Daytona/Prescott 2020 Spring | Tech Fee | 258.00 | USD |
| 11/01/2019 | Daytona/Prescott 2020 Spring | ATC Lab Fee | 415.00 | USD |
| 11/01/2019 | Daytona/Prescott 2020 Spring | DB Undergrad Tuition | 17,712.00 | USD |

41.   Plaintiff's tuition was covered in part by a scholarship and he incurred loan debt to cover his tuition and costs.

42.   Plaintiff has not attended any in-person classes since mid-March, 2020. Instead, all his classes have been moved online.

43.   Although Plaintiff has been deprived of the in-person classes and an on-campus experience for which he paid, he has not been offered and has not received any refund or reimbursement for any portion of the tuition or fees that he paid.

44.   By closing its campus in, Defendant has failed to deliver all of the educational services, facilities, technology, programming, activities, and other resources for which Plaintiff and Class members contracted when they made annual fee and tuition payments to the University.

45.   Plaintiff and the Class therefore are entitled to a prorated refund of tuition for the duration of Embry-Riddle's COVID-19-related closure for the services that Defendant has not provided, or which Defendant has provided in a severely diminished manner.

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

46.   The tuition that Plaintiff and Class members paid for on-campus programs was predicated on students' routine interaction with and feedback from peers, mentors, professors, and guest lecturers; access to equipment, technology, facilities, and laboratories; and participation in extracurricular groups and learning, among other things—the services and opportunities that they are now being denied, while still being forced to pay for them.

47.   Not only has Embry-Riddle denied students access to these tangible services and benefits that are only available on-campus, it has forced students into online classes that are substandard and objectively less valuable than those for which Plaintiff and Class members paid.

48.   The online courses into which on-campus students have been forced were not *designed* to be administered online. In Embry-Riddle's preexisting and exclusively online programs, courses were developed specifically for online delivery:

> Leveraging the award-winning expertise and technology of Embry-Riddle's Worldwide Campus, *university faculty and staff have worked hard to transition existing classes to an online platform during the current crisis. We have encountered a few challenges during this transition period,* but we remain committed to doing all we can to engage our students through high-quality online educational experiences, and to help our students engage with industry along the way to their first post-graduation job. We have continued to invest significant resources in this endeavor. We will not be offering refunds or credits for tuition or other fees.[24]

49.   However, students who enrolled in and paid for on-campus programs—who chose and paid more for classroom instruction and in-person resources over online learning—have been forced into classes that were shoehorned into an online format at the last-minute. As a result, faculty have had to scramble mid-course to reinvent the wheel and, as a result, communication and learning have suffered significantly.

> The university's Center for Teaching & Learning Excellence and our Information Technology department, guided by the Provost and Senior Vice President for Academic Affairs, has swiftly compiled a website to provide all faculty members with comprehensive tutorials and resources to ensure the best possible online

---

[24] ERAU, *Embry-Riddle Announces Credits/Refunds for Housing and Dining Charges*, available at https://news.erau.edu/headlines/embry-riddle-announces-credits-refunds-for-housing-and-dining-charges (emphasis added).

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

educational experiences for our students. Office hours will be handled via Skype or other online methods. *While hands-on work in labs will not be possible at this time, many faculty members are working to video-capture demonstrations* so that student learning can continue online.[25]

50.   Embry-Riddle offers more than 50 undergraduate and graduate courses of study, each comprised of a core curriculum and dozens of major- and minor-specific study. All of the courses being offered during the Spring 2020 term had to be converted mid-semester, in a matter of days, to a virtual format for which they were not designed.

51.   Even if the transition to online delivery had been seamless, the fact remains—as evidenced by the difference between the per-credit-hour cost of online versus in-person attendance—online courses are less valuable than the on-campus programs for which Plaintiff and Class members paid.

52.   Plaintiff and the Class have been thrust into less valuable online courses on such short notice. Even for courses that Embry-Riddle does offer both online and on-campus, the sudden, mid-course shift to remote delivery has been disruptive and challenging.

53.   The end result is that Plaintiff and the Class have paid significantly more in tuition than their peers in online programs, and yet they are receiving less. Rather than being provided online courses which were conceived as such, well-planned, and designed for online instruction from start-to-finish, they have been thrown into haphazard virtual meetings with little planning or purpose.

54.   At a minimum, then, Plaintiff and the Class should be reimbursed the difference between the tuition they paid for on-campus classes and the tuition their peers paid for online courses. In reality, however, Plaintiff and Class members actually deserve an even larger refund, as the second-rate substitutes into which they have been forced are inferior to the online instruction that Embry-Riddle typically offers to its exclusively online learners.

---

[25] ERAU, *Will educational quality be compromised if students are studying online? What about labs and interaction with faculty members?*, Frequently Asked Questions available at https://erau.edu/coronavirus/faq

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

55.   In paying their tuition, Plaintiff and Class members contracted and paid for high-quality, in-person instruction, as well as materials, lab fees, technology fees, and other associated costs. But, by abruptly closing down the school and forcing students into substandard, poorly planned, and poorly executed online courses, Embry-Riddle has not upheld its end of the bargain, and refuses to issue any prorated refunds to Plaintiff and the Class.

56.   Plaintiff and the Class have lost the benefits of the education, facilities, services, extra-curricular opportunities, and other experiences that Defendant promised. Despite failing to fulfill its obligations, Defendant is currently unlawfully retaining and refusing to fully or partially refund Plaintiff's tuition, despite the lower quality and less valuable education and services now being provided.

57.   Plaintiff appreciates that Defendant considers itself to be taking measures to protect the public health and that of its students and faculty; but Defendant must acknowledge that the education and services it now provides lack the full value of those for which Plaintiff and the Class paid. Not only is a fully online college experience inferior, both socially and academically, to the in-person experience for which Plaintiff and the Class paid; but Embry-Riddle's ersatz online courses now offered to students are inferior to online courses that were conceived as such in the first instance.

58.   Essentially, Plaintiff and the Class have paid Defendant for access to buildings, labs, and facilities that students can no longer enter; equipment and technology they can no longer use; parking spaces they cannot access; and extra-curricular groups in which they can no longer participate, among other things. The closure of these facilities and cessation of services at both campuses have resulted in a cost savings to Defendant.

59.   Thus, Plaintiff and Class have paid Defendant for a level of instruction, course content, and feedback, which, due to the abrupt and forced shift to online learning, are no longer being delivered. Defendant is profiting from COVID-19 by asking students and their families to bear the financial brunt of the pandemic. The result is a windfall to Defendant.

60.   Plaintiff and the Class have not realized and cannot realize the full value of the education, services, and other experiences that they were promised and for which they paid.

61.   Despite failing to fulfill its obligations to students, Embry-Riddle has retained Plaintiff's and the Class members' full tuition and fees.

62.   Defendant has failed to refund or reimburse Plaintiff and the Class the prorated portion of tuition and fees necessary to compensate them for the difference in value between what they paid for and what they received.

63.   Plaintiff and the Class, in paying tuition required by Defendant, reasonably expected education and services of a particular quality and value commensurate with the amount of tuition and fees each paid.

64.   However, Plaintiff and the Class have received—and will continue to receive during the 2020 Summer term—education and services of a different and substantially lesser value, i.e., one with a higher effective cost, than they reasonably expected.

65.   Accordingly, Plaintiff and the Class did not realize the benefit of the bargain and their expectations were not met.

66.   Plaintiff and the Class effectively paid more than the market value represented by bargained-for price of their tuition and costs. Plaintiff and the Class bargained with Defendant on a particular market value for the education and services they purchased. But because Defendant delivered only a portion of their reasonably expected value, Plaintiff and the Class paid a higher price than the fair market price to which they and Defendant had agreed, and received a level of education and services that was of lesser value than was represented to, and reasonably anticipated by, Plaintiff and the Class.

67.   For these reasons, the education and services delivered are worth less than what Plaintiff and the Class paid for them.

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

68.   Plaintiff and the Class lost money by not receiving what they reasonably believed they were paying for while Defendant realized a commensurate unearned gain because it did not deliver to Plaintiff and the Class what it led them to believe they would receive.

69.   Plaintiff and the Class are entitled to disgorgement of those portions of their payments for unused services and are entitled to a prorated refund of their tuition for classes that are worth less than they paid.

70.   Defendant's refusal to refund any portion of tuition impacts all Class members and their losses are capable of calculation on a class-wide or a subclass basis.

71.   Defendant's refusal to refund any portion of fees and other costs impacts all Class members and their losses are capable of calculation on a class-wide or a subclass basis.

## CLASS ACTION ALLEGATIONS

72.   Pursuant to Federal Rule of Civil Procedure 23(a), (b)(3), and (c)(4), Plaintiff brings this action for damages, equitable relief, and disgorgement on behalf of himself and the following Class and Subclass:

> *The Class:* All persons who paid on behalf of themselves or another tuition or other costs to Embry-Riddle Aeronautical University for an in-person class or classes to be conducted during the 2020 Spring or Summer terms.

> *The Florida Subclass:* All residents of the State of Florida who paid on behalf of themselves or another tuition or other costs to Embry-Riddle Aeronautical University for an in-person class or classes to be conducted during the 2020 Spring or Summer terms.

73.   Throughout this complaint, unless specifically distinguished, the terms "Class" refers jointly and severally to the National Class and the Florida Subclass.

**Prerequisites: Numerosity—FRCP 23(a)(1).**

74.   The members the proposed Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.

75.   Although the precise number of Class members is unknown to Plaintiff, a good-faith investigation reveals that approximately 2,400 students are enrolled at Defendant's Prescott

campus and approximately 6,000 are enrolled at the Daytona campus. Even if these estimates vary considerably from actual enrollments, they support the contention that the Class is comprised of thousands of geographically dispersed members who cannot be practicably joined.

76.   The true size of the class is readily ascertainable through enrollment records maintained by Defendant and there is little question joinder is impracticable.

**Prerequisites: Commonality—FRCP 23(a)(2).**

77.   This action involves questions of law and fact common to the Class, including:

    a.   the general, underlying course of conduct giving rise to the action; namely, Defendant's response to COVID-19 and its systemic policy decision not to reimburse or refund the Class as alleged herein;

    b.   whether Defendant accepted monies from the Class, and in what amounts;

    c.   whether Defendant retained money from the Class for services it did not render, or only partially rendered;

    d.   whether Defendant entered into contracts, express or implied, with the Class and, if so, the terms of such contracts;

    e.   whether Defendant breached any such contracts with the Class through its systemic policy decisions regarding reimbursement;

    f.   whether Defendant benefited from the monies accepted from the Class and, specifically, whether Defendant was unjustly enriched and/or whether Defendant converted property belonging to Class members or otherwise acted tortiously or inequitably based on its systemic policy decisions regarding reimbursement;

    g.   whether the value of the educational and other services Defendant provided to the Class was commensurate the amount of money Class members paid for them;

    h.   whether certification of the Class is appropriate; and

    i.   whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief.

78.   These common issues will drive the resolution of the litigation in that their determination will resolve in one stroke issues that are central to the validity of each Class members' claims.

79.   **Predominance.** While there may be slight variations between Class members' claims—e.g., differences in the dollar amounts paid in tuition or fees—the factual and legal issues identified above (a) remain common to the Class, (b) arise from a common course of conduct and systemic policy decisions made by Defendant, (c) predominate in number and importance over questions that may not be common to the class, and (d) preclude neither class-wide calculation of damages nor the methodological determination of how such damages should be allocated among Class members.

**Prerequisites: Typicality—FRCP 23(a)(3).**

80.   Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members each paid for tuition and other routine fees associated with the 2020 Spring and/or Summer terms, but were not provided the full range or value of the services for which they paid.

81.   Each suffered damages in the form of lost tuition and other monies paid to Defendant, and the claims all arise from a single course of conduct by Defendant and each Class member would make similar legal and factual arguments to establish Defendant's liability.

82.   There are no defenses available that are unique to the Plaintiff.

**Prerequisites: Adequacy of Representation—FRCP 23(a)(4).**

83.   Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class members.

84.   Plaintiff has retained counsel competent and experienced in complex litigation, including class actions, and he intends to prosecute this action vigorously on behalf of the Class.

85.   Plaintiff has no interests that are antagonistic to those of the Class and he will fairly and adequately protect the proposed Class members' rights, as will counsel.

**Superiority—FRCP23(b)(3).**

86.   A class action is a superior means to ensure the fair and efficient adjudication of this case.

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

87.   The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of the claims described herein against Defendant so that making the class whole in the absence of a class action is unlikely and impracticable.

88.   This also means class members have relatively less interest in individually controlling the prosecution of separate actions and it cannot be said that the interests of individuals pursuing individual cases in conducting separate lawsuits is so strong as to call for denial of a class action. Indeed, upon information and belief—based upon searches of PACER and the Florida circuit civil docket for Volusia County (where Defendant maintains its principal place of business—no other legal actions have been brought against Defendant concerning the subject matter of this action.

89.   Defendant has no facially plausible interest in defending against separate, geographically dispersed claims and, in fact, that would be more burdensome to Defendant than defending against all potential claims in a single forum and proceeding.

90.   Likewise, the judicial system has no interest in burdening a number of courts when the claims of this highly cohesive class can be fairly and efficiently concentrated and managed by this Court.

91.   Finally, individualized actions would run the risk of creating inconsistent or contradictory judgments arising from the same set of facts and would increase the likely delay and expense to all parties involved and to the courts, including this Court. By proceeding as a class action, the claims at issue can be managed efficiently through economies of scale.

**Particular Issues—FRCP 23(c)(4).**

92.   Any or all of the issues identified in ¶ 77(a)-(i) are appropriate for certification pursuant to Fed. R. Civ. P. 23(c)(4) because each is particular and common to the Class and the resolution of each or all would materially advance the disposition of this action and the parties' interests.

93.   Certification of particular issues would move the litigation forward efficiently, saving money, time, and judicial resources for all involved, regardless of whether the action as a whole might be certified.

94.  For the reasons set forth above, these issues predominate in number and importance over questions that may not be common to the class.

## COUNT I
### Breach of Contract

95.  Plaintiff repeats, realleges and incorporates ¶ 1-94 as if fully alleged herein.

96.  Plaintiff brings this claim individually and on behalf of the National Class and the Florida Subclass (referred to as the Class).

97.  Plaintiff and the Class had the capacity to enter into and in fact entered into binding contracts with Defendant.

98.  Plaintiff and the Class members' contracts with Defendant provide that Plaintiff and the Class would pay tuition in exchange for on-campus educational, extracurricular, and social facilities and experiences.

99.  Specifically, Defendant offered and Plaintiff and the Class accepted—in exchange for paying their respective tuition amounts and other costs—on-campus educational and social facilities, services, and experiences for the 2020 Spring and Summer terms.

100.  These contracts were formed by multiple documents when students bid by formally registering for courses offered by Defendant, in light of the quoted tuition pertaining to such registration, and Defendant thereafter accepted those bids, or registrations, by sending bills for tuition to Plaintiff and Class members, which were accepted and paid.

101.  As part of their contracts with Defendant, and, in exchange for adequate consideration that Plaintiff and the Class provided, Defendant promised to provide on-campus educational and social facilities, services, and experiences for the 2020 Spring and Summer terms to Plaintiff and the Class.

102.  Ever since closing its campus in mid-March 2020, Defendant has failed to provide the services that it was obligated to provide under its contracts with Plaintiff and the proposed Class.

Defendant has retained tuition payments and fees paid by Plaintiff and the Class without providing them the full range or value of the promised benefits.

103. By contrast, Plaintiff and the Class fulfilled their end of the bargain when they paid the monies due and owing for their full tuition and other costs, and they have otherwise satisfied all conditions precedent to the maintenance of this action.

104. Defendant's breach of these contracts is material in each instance and has resulted in Plaintiff and members of the Class suffering losses and damages including, but not limited to, those of the sort described in ¶¶ 55-68.

105. The tuition and other payments that Plaintiff and the Class paid were intended to cover in-person educational and extra-curricular services. Defendant, however, has improperly retained the funds Plaintiff and the proposed Class paid without providing them the full range or value of the services and other benefits due under the contracts.

106. Defendant's performance under the contracts is not excused because of COVID-19. Even if performance were excused or impossible, Defendant would nevertheless be required to return the funds received for services and/or goods that it did not provide.

107. WHEREFORE, Plaintiff and the Class seek all damages and equitable relief to which they may be entitled, including refund of an amount of money not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class contracted and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

## COUNT II
### Contract Implied in Law (Restitution/ Quasi-Contract)

108. Plaintiff repeats, realleges and incorporates ¶ 1-94 as if fully alleged herein.

109. Plaintiff brings this claim individually and on behalf of the National Class and the Florida Subclass (referred to as the Class).

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

110.   Plaintiff and the Class have conferred a benefit on Defendant in the form of tuition and other payments for the 2020 Spring and Summer terms.

111.   Defendant was aware of this benefit, voluntarily accepted it, and has retained this benefit, to which it is not entitled, at the expense of Plaintiff and the Class.

112.   For the reasons set forth in this complaint, the circumstances are such that it would be inequitable for Defendant to retain the full amount of the benefit conferred upon it by Plaintiff and the Class.

113.   Defendant has wrongfully retained a benefit conferred upon it by Plaintiff and the Class in an amount not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

114.   WHEREFORE, Plaintiff and the Class seek disgorgement and refund of an amount of money not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

## COUNT III
## Unjust Enrichment

115.   Plaintiff repeats, realleges and incorporates ¶ 1-94 as if fully alleged herein.

116.   Plaintiff brings this claim individually and on behalf of the National Class and the Florida Subclass (referred to as the Class).

117.   This Count is alleged in the alternative to the claims set forth for legal relief.

118.   Plaintiff and the Class have conferred a benefit on Defendant in the form of tuition and other payments for the 2020 Spring and Summer terms.

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

119.   Defendant was aware of this benefit, voluntarily accepted it, and has retained and appreciated this benefit, to which it is not entitled, at the expense of Plaintiff and the Class.

120.   For the reasons set forth in this complaint, the circumstances are such that it would be inequitable for Defendant to retain the full amount of the benefit conferred upon it by Plaintiff and the Class.

121.   Defendant has wrongfully retained a benefit conferred upon it by Plaintiff and the Class in an amount not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

122.   WHEREFORE, Plaintiff and the Class seek disgorgement and refund of an amount of money not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

## COUNT IV
### Conversion

123.   Plaintiff repeats, realleges and incorporates ¶ 1-94 as if fully alleged herein.

124.   Plaintiff brings this claim individually and on behalf of the National Class and the Florida Subclass (referred to as the Class).

125.   Defendant has wrongfully asserted dominion over the monies Plaintiff and the Class paid in the form of tuition and other fees and costs for on-campus educational and social facilities, services, and experiences for the 2020 Spring and Summer terms.

126.   Plaintiff and the Class maintained a property interest when such monies were paid over to Defendant and Defendant's retention of such monies without delivering a commensurate level of on-campus educational and social facilities, services, and experiences, as described in this complaint, renders Defendant's retention of and dominion over such monies

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

inconsistent with Plaintiff and the Class members' interest in such monies, or the portion of those monies that would be commensurate with the value of the on-campus educational and social facilities, services, and experiences that Defendant failed to deliver or cannot deliver.

127.   Likewise, by paying such monies to Defendant, Plaintiff and the Class were vested with a right to a level of on-campus educational and social facilities, services, and experiences for the 2020 Spring and Summer terms commensurate with the amount of monies paid.

128.   Defendant's failure to provide the level of on-campus educational and social facilities, services, and experiences as described in this complaint, for which Plaintiff and the Class members paid, and Defendant's retention of all monies paid despite this failure on its part, interferes with the Plaintiff's and the Class members' right to and interest in a level of on-campus educational and social facilities, services, and experiences commensurate with the amount of monies paid.

129.   Defendant's interference with and dominion over Plaintiff's and the Class members' property and property interests, as described herein, entitles Plaintiff and the Class to damages equal to the full value of their property and property interests over which Defendant has wrongfully exercised dominion.

130.   WHEREFORE, Plaintiff and the Class seek disgorgement and refund of an amount of money not less than the amount that would be commensurate with the difference between the reasonable or fair market value of the on-campus educational and social facilities, services, and experiences for which Plaintiff and the Class paid and the actual value of the on-campus educational and social facilities, services, and experiences that Defendant delivered.

## PRAYER FOR RELIEF

131.   Plaintiff, individually and on behalf of the Class, respectfully requests that the Court provide the following relief in their favor against Defendant:

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR • 316 S. BAYLEN ST. 6TH FLOOR • PENSACOLA, FL 32502

a. certifying the Class and/or the Florida Subclass as requested herein, designating Plaintiff as Class representative, and appointing the undersigned as Class Counsel;

b. alternatively, certifying one or more issues identified herein pursuant to Fed. R. Civ. P. 23(c)(4) as requested herein, designating Plaintiff as Class representative, and appointing the undersigned as Class Counsel;

c. declaring that Defendant is financially responsible for notifying the Class of the pendency of this suit;

d. declaring that Defendant has wrongfully retained monies paid by the Class;

e. awarding money damages and losses for breach of contract and on any other grounds permitted by law or equity;

f. awarding injunctive relief, declaratory relief, restitution, and disgorgement as permitted by law or equity;

g. awarding Plaintiff's reasonable attorney's fees, costs, and expenses;

h. awarding pre- and post-judgment interest on any amounts awarded, to the extent permitted in law or equity; and

i. awarding such other and further relief as the Court deems just and proper.

Respectfully Submitted: May 28, 2020.

*s/Matthew D. Schultz*
Matthew D. Schultz (FBN 0640328)
*Trial Counsel*
**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**
mschultz@levinlaw.com
Rebecca K. Timmons (FBN 121701)
rtimmons@levinlaw.com
Brenton J. Goodman (FBN 126153)
bgoodman@levinlaw.com
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Tel: (850) 435-7140
Fax: (850) 436-6140

*s/ E. Michelle Drake*
E Michelle Drake (PHV forthcoming)
emdrake@bm.net
**BERGER MONTAGUE, PC**
43 SE Main St., Suite 505
Minneapolis, MN 55414
Tel: (612)594-5900

## DEMAND FOR JURY TRIAL

Individually and on behalf of the Class and the Florida Subclass, Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted: May 28, 2020.

*s/Matthew D. Schultz*
Matthew D. Schultz (FBN 0640328)
*Trial Counsel*
**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**
mschultz@levinlaw.com
Rebecca K. Timmons (FBN 121701)
rtimmons@levinlaw.com
Brenton J. Goodman (FBN 126153)
bgoodman@levinlaw.com
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Tel: (850) 435-7140
Fax: (850) 436-6140

*s/ E. Michelle Drake*
E Michelle Drake (PHV forthcoming)
emdrake@bm.net
**BERGER MONTAGUE, PC**
43 SE Main St., Suite 505
Minneapolis, MN 55414
Tel: (612)594-5900