## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CHRISTOPHER RHODES, individually
and on behalf of all others similarly
situated,

                Plaintiff,

                             CASE NO. 6:20-cv-00927-PGB-EJK

vs.

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY, INC.,

                Defendant.

_____/

### DEFENDANT'S DISPOSITIVE MOTION TO DISMISS
### THE AMENDED COMPLAINT

Defendant, Embry-Riddle Aeronautical University, Inc. (the "University" or "Embry-Riddle"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss the Amended Class Action Complaint (the "Amended Complaint") (Doc. 32) filed by Plaintiff, Christopher Rhodes ("Rhodes"), for failure to state a claim upon which relief can be granted.

The University seeks dismissal of all counts in Plaintiff's Amended Complaint: Count I—Breach of Contract and Count II—Unjust Enrichment. In the Motion, the University first presents legal authority and grounds for dismissal that are applicable to both counts. Next, the University presents legal authority and grounds for dismissal that are applicable to each individual count.  Accordingly, the Motion is organized in sections as follows and asserts as to all counts: (A) Based on well-settled law and public policy, Florida courts extend great

deference to institutions of higher learning to exercise discretion in implementing their academic programs, such as the manner in which the University continued Plaintiff's academic courses in full when responding to the COVID-19 pandemic; and (B) Florida law precludes Plaintiff's claims because they are effectively claims of "educational malpractice," which is not actionable under Florida law. Based on these grounds, the Court should dismiss the Amended Complaint with prejudice.

The Motion next addresses specific legal authority and grounds for dismissal unique to each individual count, including why Plaintiff's Amended Complaint fails to meet the minimum pleading standards required by Rule 8(a), as set forth in *Twombly* and *Iqbal*. Thus, Count I—Breach of Contract must be dismissed because the Amended Complaint fails to adequately allege the specific provision of the contract that was allegedly breached, and Count II—Unjust Enrichment must be dismissed because the University provided a substantial benefit to Plaintiff that negates the claim.  Also, Count II improperly incorporates Plaintiff's contract allegations within his claim of unjust enrichment, creating an internal inconsistency that requires dismissal. Based on the foregoing arguments, as set forth more fully below, the University respectfully requests that Plaintiff's Amended Complaint be dismissed for failure to state a claim upon which relief can be granted.

## INTRODUCTION

The novel coronavirus, which causes the disease known as COVID-19, is an extremely contagious respiratory disease that has caused a global pandemic. COVID-19 began rapidly spreading across the United States in March 2020. In the midst of this escalating public health crisis, governments, private entities, and individuals were required to drastically change what

was "normal." As state and local governments across the country ordered the shutdown of non-essential activities and imposed limits on group gatherings, private businesses and schools were required to make informed decisions to keep people safe. So, on March 18, 2020, Embry-Riddle, like schools across the country, suspended in-person instruction and moved all classes online at enormous expense to the University. Through significant efforts, the University's academic instruction continued unabated online through the remainder of the Spring 2020 semester. The COVID-19 crisis continues to heavily affect Embry-Riddle, which continues to balance its core educational mission with the health of its students and faculty.

Embry-Riddle is an accredited, private, nonprofit university with campuses in Daytona Beach, Florida and Prescott, Arizona. (Doc. 32 ¶ 6-7, 14). Plaintiff is an undergraduate student and is scheduled to receive his Bachelor of Science in Aeronautics from the University in 2022. (Doc. 32 ¶ 5). Plaintiff enrolled in the Spring 2020 term. (Doc. 32 ¶ 54). As part of national and statewide efforts to confront COVID-19, the University transitioned Plaintiff's Spring 2020 classes from in-person to online effective as of March 18, 2020. (Doc. 32 ¶ 59). Plaintiff accepted the University's offer to continue his studies online and received academic credit for the Spring 2020 classwork completed in May 2020. (*See* Doc. 32 ¶ 72).

The Complaint alleges that Plaintiff paid over $18,000 in tuition and fees for the Spring 2020 term and includes a portion of a screen shot of "Charges."  (Doc. 32 ¶ 56). However, the complete document, central to the claim, attached as Exhibit "A,"[1] tells the full story: Plaintiff received a $6,000 University scholarship, which more than covered the cost of

---

[1] "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

Plaintiff's fees and a portion of Plaintiff's tuition, while loans covered the remaining tuition. As a technical matter, Plaintiff's Complaint does not allege he personally paid any amount that he now seeks to recover as "refund" damages, as he concedes he received the scholarship and loans. (Doc. 32 ¶ 58).

Further, Plaintiff does not allege he paid any specific amount for the Summer 2020 term, whether he paid anything, or whether he was even enrolled for that term (he was not). (Contrast with allegations regarding Spring 2020 term in Doc. 32 ¶ 54, 56). Nonetheless, Plaintiff's Amended Complaint seeks damages for both the Spring and Summer 2020 terms. (Doc. 32 ¶ 81, 90, 109, 117, 134).

The University raised these pleading defects in its motion to dismiss Plaintiff's original complaint (Doc. 26), and Plaintiff thereafter filed his Amended Complaint. (Doc. 32). Once on notice, it was incumbent upon Plaintiff to correct his factually-unsupported assertions in his Amended Complaint and avoid misleading the Court. As demonstrated further below, Plaintiff's continuing failure to satisfy the *Twombly/Iqbal* pleading standards justifies dismissal of his claimed damages for the Spring 2020 term and all aspects of his claim to recover alleged summer school payments that he did not make.[2]

Structurally, each of the Amended Complaint's two counts incorporate the same general allegations in Paragraphs 1 through 105. (Doc. 32 ¶ 106, 131). Thus, the factual allegations supporting Plaintiff's contract claim in Count I are the same as those on which Plaintiff bases his non-contract claim in Count II. While stated differently throughout the

_____

[2] Plaintiff's non-personal, partial payment for spring (through loans) and non-participation in summer school raise serious questions about whether Plaintiff could be an appropriate class representative and whether this case is susceptible to class certification.

Complaint, the core of Plaintiff's allegations against the University are summarized in Paragraph 78:

> Plaintiff recognizes that Defendant likely was taking measures it deemed necessary to protect the public health.  However, the education and services Embry-Riddle provided to students online as part of its continuing operations are not those for which Plaintiff and the Class registered, were billed for, and paid.

(Doc. 32 ¶ 78).  As explained below, the relief requested in each count is unavailable based on Plaintiff's allegations, and the Amended Complaint should be dismissed with prejudice.

## LEGAL AUTHORITY

### I.        The Legal Standard for Dismissal Under Rule 12(B)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. To avoid dismissal, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff alleges enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The mere recitation of elements of a claim is not enough, and the court need not give any credence to legal conclusions that are not supported by sufficient factual material. *Id.*; *see also Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1298 (M.D. Fla. 2017). While the Court must accept the plaintiff's well-pleaded facts as true and read the complaint in the light most favorable to the plaintiff, it need not accept mere legal conclusions. *Brinson v. Welsh*, 709 F. App'x 582, 584 (11th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678); *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994).

A complaint that contains only "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Worthy v. City of Phenix City, Alabama*, 930 F.3d 1206, 1217 (11th Cir. 2019). Moreover, the Supreme Court has rejected the notion that discovery must be available to a plaintiff who cannot allege sufficient factual content to plausibly suggest an entitlement to relief: "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. Here, Plaintiff has failed to assert sufficient factual allegations to nudge his claims "across the line from conceivable to plausible." *Id.* at 680 (quotation marks omitted); *Stein v. TitleMax of Georgia, Inc.*, No. 19-13669, 2020 WL 3790528, at *4 (11th Cir. July 7, 2020).

## II. The University has Autonomous Decision-Making Authority Regarding Its Provision of Educational Services

### A. The Academic Deference Doctrine Allows The University Ultimate Discretion To Implement Its Academic Programs

"Considerations of profound importance counsel restrained judicial review of the substance of academic decisions." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985). In *Regents*, the Supreme Court counseled that colleges and universities have a wide range of discretion and courts should "show great respect" by exhibiting deference to the school and faculty's professional judgments in making academic decisions. *Id.* Courts have a "responsibility to safeguard [educational institutions'] academic freedom." *Id.* at 226. This academic freedom specifically includes "*autonomous decision making* by the academy itself." *Id.* at 226 n.12 (emphasis added). That includes a school's right to determine what may be taught and "*how it shall be taught*." *Sweezy v. State of N.H. by Wyman*, 354 U.S. 234, 263

(1957) (emphasis added). Therefore, a federal court is not the forum to review educational decisions, nor is it best suited to evaluate the substance of academic decisions. *Regents*, 474 U.S. at 226.

Rather than second-guess a university's decision making in the realm of academic instruction, "[a] court will not interfere with a private university's enforcement of its regulations unless the university has acted arbitrarily and capriciously, in violation of a constitution or statute, or for fraudulent purposes." *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013). Florida courts recognize this policy that "[u]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students." *Jallali v. Nova Se. Univ., Inc*., 992 So. 2d 338, 342 (Fla. 4th DCA 2008) (adhering to the deferential standard and finding that implicit in a university's general contract with students is a right to change the university's academic degree requirements if such changes are not arbitrary or capricious); see also *Mahavongsanan v. Hall*, 529 F.2d 448, 449 (5th Cir. 1976) (as a matter of law, educational contracts have "unique qualities" and must "be construed in a manner which leaves the school sufficient discretion to properly exercise its educational responsibility."). In *Mahavongsanan*, a student alleged breach of contract when additional graduation requirements were added after her enrollment. The court held the "wide latitude and discretion afforded by the courts to educational institutions" meant the university was entitled to unilaterally modify its academic requirements so as to properly exercise its educational responsibility. *Id.*

It is hard to conceive of a scenario more deserving of this academic deference than during the middle of a global pandemic that forced the University to adjust its method of

academic delivery to protect its students against COVID-19 and still provide them with effective instruction. Plaintiff makes no allegation that the University failed to provide him with academic instruction to complete his Spring 2020 classes or that the University did not award him academic credit for those classes, credit that moved him toward the award of his degree in 2022. The University simply continued the same instruction in an online format for the physical protection of students and as a necessary response to the threat of a dangerous virus. Plaintiff does not allege a failure to receive the academic benefits of his bargain; he merely laments the *format* of his academic instruction during a pandemic and his alleged loss of "social services and experiences." (Doc. 32 ¶ 116).

This decision to shift from on-campus to an online learning platform was a decision rooted in the best professional judgment of the faculty and staff to protect all students and continue to provide for their educational advancement. Based on the courts' long-standing application of academic deference and the extraordinary circumstances facing the University, this Court should apply the academic deference doctrine and dismiss the entirety of Plaintiff's Complaint with prejudice.

> **B.    Plaintiff's Allegations Amount to a Claim for Educational Malpractice That is Non-Actionable in Florida**

The policy reasons behind academic deference also disqualify any educational malpractice claim under Florida law. At its core, Plaintiff's Complaint is premised on the value of the academic instruction he received, for which he got academic credit. (Doc. 32 ¶ 76). His theory, that the temporary transition to an online learning format is inferior to the in-person instruction he previously received (Doc. 32 ¶ 72), is not actionable as a matter of law. Each of

Plaintiff's counts advance this premise, relying on the same general allegations. (Doc. 32 ¶ 1-105).

By whatever title Plaintiff may style the counts of his Amended Complaint, they both amount to a cause of action for educational malpractice, which is "not cognizable under Florida law." *Rohn v. Palm Beach Cty. Sch. Bd.*, No. 11-81408-CIV, 2012 WL 6652940, at *3 (S.D. Fla. Dec. 21, 2012) (citing *Florida Dep't of Health & Rehab. Serv. v. B.J.M.*, 656 So. 2d 906, 914 (Fla. 1995) and *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004)); *McCurdy v. Virginia Coll., LLC*, No. 3:17-CV-562-J-32JBT, 2018 WL 1886579, at *3 (M.D. Fla. Mar. 7, 2018), *report and recommendation adopted*, No. 3:17-CV-562-J-32JBT, 2018 WL 1877472 (M.D. Fla. Apr. 19, 2018).[3]

In *McCurdy*, the Court confirmed[4] an arbitration award that found that a petitioner's claim for breach of contract, which alleged that the school did not provide her with an adequate education, among other things, "was actually a non-viable educational malpractice claim improperly couched as a breach of contract claim." *Id.*

> The arbitrator recognized Petitioner's argument that "Virginia College's courses and educational offerings failed to meet minimum educational standards and that Virginia College breached the implied contract to educate." Nevertheless, the arbitrator concluded: "In her complaint, Claimant asserted that Virginia College 'failed to meet minimum education standards.' This, however, is not a claim for breach of contract, nor a viable claim under the law ...." Thus, the undersigned recommends that this argument be rejected.

---

[3] *Vacated*, No. 3:17-CV-562-J-32JBT, 2018 WL 5814787 (M.D. Fla. Apr. 26, 2018), *and appeal dismissed*, No. 18-12582-JJ, 2018 WL 4537176 (11th Cir. Aug. 13, 2018).
[4] Later vacated on other grounds.

*Id.* Like the petitioner in *McCurdy*, Plaintiff may feel that the education he received was less than expected, but that is not an actionable claim no matter how it is pled. *See C.P. v. Leon Cty. Sch. Bd.*, No. 4:03 CV 65 RH/WCS, 2005 WL 2133699, at *5 (N.D. Fla. Aug. 27, 2005) ("The claim is in essence one of educational malpractice, that is, failure to use reasonable care to provide an adequate education. This claim fails because Florida law recognizes no such cause of action."); *R.P. v. Leon Cty. Sch. Bd.*, No. 4:03CV387-SPM, 2005 WL 8164796, at *9 (N.D. Fla. Sept. 30, 2005) (Plaintiffs' claim "for failure to provide an adequate education is in essence a claim for educational malpractice. The claim is not cognizable under Florida law. Accordingly, Plaintiff's negligence claims must be dismissed with prejudice.").

The task of this Court in this diversity action is to apply established Florida law. *See GuideOne Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005). Like courts in many other states, Florida courts refuse to recognize a cause of action for educational malpractice. Florida's Third District Court of Appeal first addressed the bar on such claims in 1982, as subsequently reaffirmed by other district courts of appeal and the Supreme Court of Florida. *Tubell v. Dade Cnty. Pub. Sch.*, 419 So. 2d 388, 389 (Fla. 3d DCA 1982) (concluding no cause of action had been stated and finding that while Plaintiff's complaint alleged in separate counts a variety of causes of action, "the underlying facts pleaded to support each count were, in fact, those that would support a claim for 'educational malpractice,' regardless of the nomenclature"); *Dep't of Health & Rehab. Servs. v. B.J.M.*, 656 So. 2d 906 (Fla. 1995); *Simon v. Celebration Co.*, 883 So. 2d 826, 832 & n.5 (Fla. 5th DCA 2004); *Monroe v. Sarasota Cnty. Sch. Bd.*, 746 So. 2d 530, 533 n.4 (Fla. 2d DCA 1999); *Armstrong v. Data Processing Inst., Inc.*, 509 So. 2d 1298, 1299 (Fla. 1st DCA 1987) (the

nomenclature of a plaintiff's claims is irrelevant if "the gravamen of [the claim] is a cause of action for educational malpractice which is not cognizable in Florida.").

The Supreme Court of Florida has long barred such claims in part because, "each and every time a student fails to progress academically, it can be argued that he or she would have done better and received a greater benefit if another educational approach or diagnostic tool had been utilized." *B.J.M.*, 656 So. 2d at 914.

This Court has also specifically recognized that Florida courts do not allow a claim of educational malpractice against private academic institutions, declaring that Florida courts will "construe claims as educational malpractice claims even if they are pleaded as other types of claims. Florida courts examine the true nature of the claims regardless of how a plaintiff labels them." *Newman v. Socata SAS*, 924 F. Supp. 2d 1322, 1326, 1329 (M.D. Fla. 2013).[5]

Here, the Complaint solely alleges "traditional" claims of educational malpractice. This case merely claims "damages" because of changes to the style of academic education (online instead of on campus) made necessary by the pandemic yet delivered in full to Plaintiff.

Therefore, the Court should dismiss Plaintiff's Complaint in its entirety because the central premise underlying both of Plaintiff's claims is simply not actionable under long-established Florida law. Consequently, any further amendment would be futile and dismissal with prejudice is appropriate. *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162-63 (11th Cir. 2019) ("the District Court may properly deny leave to amend the

---

[5] The *Socata* Court ultimately declined to dismiss the action because the bar on educational malpractice did not extend to a negligence claim against a flight training school following a crash that was allegedly the result of a known hazard with the airplane.

complaint under Rule 15(a) when such amendment would be futile"); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Rance v. Winn*, 287 F. App'x 840, 841 (11th Cir. 2008).

### III.        Plaintiff Fails to State a Claim in Count I for Breach of Contract

Even if Plaintiff could overcome the educational-related bar to his claims, Count I would still fail. To state a claim for breach of contract in Florida, Plaintiff must establish three elements: (1) the existence of a valid contract, (2) a material breach, and (3) damages resulting from the breach. *Gaines v. Robinson Aviation (RVA), Inc.*, No. 6:14-CV-391-ORL-40, 2014 WL 6882934, at *3 (M.D. Fla. Dec. 4, 2014). However, on a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 662.

### A.        Plaintiff Fails to Allege Any Contract Provision that was Allegedly Breached

"In order to allege a material breach in accordance with the pleading standards required under the Federal Rules of Civil Procedure, the plaintiff must allege which provision of the contract has been breached." *Brown v. Cap. One Bank (USA), N.A.*, No. 15-60590-CIV, 2015 WL 5584697, at *3 (S.D. Fla. Sept. 22, 2015); *George v. Wells Fargo Bank, N.A.*, No. 13-80776-CIV, 2014 WL 61487, at *4 (S.D. Fla. Jan. 8, 2014) (failure to identify which provision of the contract has been breached "runs afoul of *Twombly*" and "renders the pleading deficient under Florida contract law").

"It is appropriate to dismiss a breach of contract claim if it fails to state which provision of the contract was breached." *Cruz v. Underwriters at Lloyd's London*, No. 8:14-CV-1539-T-33TBM, 2014 WL 3809179, at *2 (M.D. Fla. Aug. 1, 2014); *Whitney Nat. Bank v. SDC Cmtys., Inc.*, No. 8:09–cv–1788–EAK–TBM, 2010 WL 1270264, at *3 (M.D. Fla. Apr. 1, 2010)

(dismissing breach of contract claims because plaintiff failed to "allege the specific provision of the contract allegedly breached," and thus the claims were "examples of 'the-defendant-unlawfully-harmed-me' accusation that *Iqbal* warned against"). "It is a basic tenet of contract law that a party can only advance a claim of breach of contract by identifying and presenting the actual terms of the contract allegedly breached." *Herssein Law Grp. v. Reed Elsevier, Inc.*, 594 F. App'x 606, 608 (11th Cir. 2015).

Plaintiff fails to attach any "contract" to the Amended Complaint – even after he was placed on notice of this deficiency via Defendant's motion to dismiss the original complaint (Doc. 26) – and only provides references to websites related to the ERAU policies and student handbook, among other things.  (Doc. 32 n. 4, 14). He fails to allege any specific contract provisions that support his claim.

Plaintiff mostly relies on marketing materials for the misguided idea that a University *experience* is part of the *academic contract* acquired in return for a tuition payment. The Amended Complaint points to no contract that supports that notion; nor does such a contractual term exist. All Amended Complaint allegations related to experiential learning and "social services and experiences" (Doc. 32 ¶ 109, 116, 127, 138) are red herrings. For example, students learn from their roommates and study groups, but tuition is not paid for those benefits. The same goes for the experience of living, cooking, and scheduling activities on your own for the first time. These important intangible learning benefits are not acquired through a tuition-related contract; instead, they are free, tangential benefits that coincide with a campus education.

Plaintiff's allegations are silent regarding any specific, tuition-related or academic contractual benefit that the University allegedly failed to provide between March and May 2020

as Plaintiff completed his classes online, for which he received full academic credit. Moreover, the Complaint is silent with respect to any contractual damages allegedly suffered by Plaintiff as a result of lost on-campus experiences between March and May 2020 during the global pandemic. And even if there was some theoretically-compensable loss associated with those intangible benefits, the Complaint is silent in acknowledging that Plaintiff was already receiving one-third of his educational benefits *for free* via a generous University scholarship towards his tuition and fees. Exhibit "A." Especially in the context of Plaintiff's Amended Complaint, filed after Plaintiff was put on notice of the fundamental *Twombly / Iqbal* flaws in his original pleading, it was incumbent upon Plaintiff to amend those flaws and plead his contract claims with factual specificity. Plaintiff failed to do so, because he cannot do so.

The specific-provision pleading requirement holds true in a university-related breach of contract action. *See Villard v. Capella Univ.*, No. 6:17-cv-1429-Orl-41GJK, 2017 WL 9253388, at *2 (M.D. Fla. Dec. 21, 2017), *report and recommendation adopted,* 2018 WL 2011433 (Apr. 30, 2018). In *Villard*, the Court explained that a student suing a private university for breach of contract must set forth in his complaint the *specific* term that the university allegedly violated:

> ***Because the terms of a student's implied contract with the university are set forth in the university's catalogs, student manuals, student catalogs, and other policies and procedures, federal courts have dismissed breach of contract claims against a university when the plaintiff fails to specify the particular rule or procedure that the university allegedly violated.***

*Id*. (citations omitted). This pleading requirement – that a student asserting a breach of contract claim against a private university must specifically identify the policy or rule

14

allegedly breached – is not unique to Florida law. For example, in *Gibson v. Walden Univ., LLC,* 66 F. Supp. 3d 1322 (D. Or. 2014), the district court noted that, "[i]n order to state a claim for breach of contract in the private university context, the plaintiff 'must point to an identifiable contractual promise that the defendant failed to honor.'" 66 F. Supp. 3d at 1324 (quoting *Ross v. Creighton Univ.,* 957 F.2d 410, 416 (7th Cir. 1992)). In *Gibson*, the court dismissed the student's contract claim because "Plaintiff has failed to state a claim for breach of contract based on the Walden Student Handbook." 66 F. Supp. 3d at 1326.

Similarly, in *David v. Neumann Univ.*, 177 F. Supp. 3d 920 (E.D. Pa. 2016), the district court recognized that the relationship between a student and a private university is contractual in nature, and the allegations in a breach of contract suit against a private university must identify the specific promise that the school failed to honor. *Id.* (citing *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 133 (3d Cir. 2011) ("the allegations must relate to a specific and identifiable promise that the school failed to honor") and *Hart v. Univ. of Scranton,* No. 11-1576, 2012 WL 1057383, at *4 (M.D. Pa. Mar. 28, 2012) (dismissing breach of contract claims against university where plaintiff failed to point to any specific terms in the handbook that the university allegedly violated)). In *David*, the court held that the plaintiff had failed to state a claim for breach of contract because the complaint did not make clear which policies and/or procedures the university allegedly breached. *Id.; see also Nungesser v. Columbia Univ.,* 169 F. Supp. 3d, 369-70 (S.D.N.Y. 2016) (dismissing student's breach of contract claim because student failed to identify discrete promises allegedly breached and noting that general policy statements and broad and unspecified procedures and guidelines will not suffice). Here, Plaintiff's reliance on

general University marketing statements will not suffice; he must point to specific terms under his contract for academic instruction that the University allegedly breached.

In all institutions of higher education, the contractual arrangement is an exchange of the payment of tuition for the university's academic instruction, with an award of course credit and eventual graduation with a degree if the student meets all academic requirements for that degree. *Jallali*, 992 So. 2d at 342 ("Implicit in the student's contract with a private university is the notion that if the student complies with the terms prescribed by the university, the student will obtain a degree."). This was the crux of the contractual arrangement between the University and Plaintiff prior to COVID-19, and it remains so today. Conspicuously absent from Plaintiff's Complaint is any allegation that Plaintiff was unable to receive full academic credit for all his Spring 2020 classes or that he has been delayed in his progress toward graduation by the temporary change of venue from in-person to online academic instruction. Plaintiff does not even properly plead that he personally paid or will have to repay any amount for which he seeks a refund. (*Compare* Exhibit "A" *with* Doc. 32 ¶ 56, 58).

If Plaintiff meets the credit hours and other requirements established by the University, then the University agrees to confer a degree on him. This is the traditional—indeed, universal—agreement between students and universities. *Jallali* at 342. Any other "experiential" component, such as "the rich and robust social experience students can expect from an on-campus education" (Doc. 32 ¶ 46), is simply not part of the education contract.

Plaintiff's *Twombly/Iqbal* obligations require him to allege supporting facts in the form of a breached contractual provision, which he does not do. Moreover, the Complaint is silent with respect to any damages allegedly suffered by Plaintiff tied to any lost on-campus experience

during the global pandemic. This pleading requirement is especially important here, because no such supporting facts exist. Plaintiff may vaguely allege that the "on-campus experience is not limited to academic opportunities" (Doc. 32 ¶ 46), but the University neither charges nor does Plaintiff pay for such non-academic experience. And as shown in "Exhibit A," Plaintiff was a non-residential student (no charge for campus housing), his vague references to allegedly lost "on-campus experience" as a non-residential student fail to meet the *Twombly/Iqbal* standard. Without the ability to plead facts, Plaintiff cannot adequately allege his breach of contract claim under *Twombly/Iqbal*. He indisputably received full academic instruction during the spring semester (albeit in an online form), and Plaintiff's Amended Complaint omits any non-conclusory allegation of *fact* that the parties' contract provided for social or experiential benefits that he allegedly paid for and lost during the pandemic.

**B.     The Exhibits Central to the Amended Complaint Contradict the Allegations**

In this Circuit, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) *quoting Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

Rather than attach any contract upon which Plaintiff relies, he references websites in footnotes and pastes quotes and pictures from marketing materials.  Likely, this is because not only does no specific provision guarantee what Plaintiff claims, but the express

provisions of the 2019-20 Undergraduate/Graduate Catalog, Daytona Beach Campus (referenced at Doc. 32 ¶ 21 n. 5) contradict it. A true and correct copy of the 2019-20 Undergraduate/Graduate Catalog, Daytona Beach Campus (the "19-20 Catalog") is attached as Exhibit "B"; *see* Fed. R. Civ. P. 10(c).

The 19-20 Catalog includes a section related to Academic Regulations and Procedures, which begins on Page 39 of the 19-20 Catalog. It reads:

> The University reserves the right to change curricula and academic regulations and procedures without notice or obligation. Such changes are published in the next catalog and through periodic University announcements.

Under "Schedule of Classes and Registration," the section goes on to read:

> A schedule of classes is prepared for each term at all locations served by the University. The University reserves the right to make necessary and appropriate adjustments to the published schedule to include cancellation or rescheduling of any class.

(Exhibit "B" 19-20 Catalog p. 39).

This portion of the 19-20 Catalog specifically clarifies that decisions, such as the one the University had to make to keep students safe from the COVID-19 pandemic, are squarely within the University's academic rights. *See also* "Section II", *supra*, at page 6. Therefore, not only does Plaintiff fail to point to specific contract provisions that Defendant breached, but the documents explicitly referenced in the Complaint negate those claims and provide the University with deference to make adjustments as would be necessary during a global pandemic.

Additionally, the 19-20 Catalog provides a refund policy. (Exhibit "B" 19-20 Catalog p. 66). Withdrawing from a class after 26 days of the class provides no refund to the

student.  *Id.*  As March 18, 2020 was more than 26 days after the beginning of the Spring 2020 Semester (Doc. 32 ¶ 76), no refund would be justified under the 19-20 Catalog, *even if* a student did not complete classes that semester. Here, Plaintiff completed all classes and received full academic credit for them. Furthermore, the 19-20 Catalog provides a procedure for a student to petition for a refund for circumstances outside a student's control. (Exhibit "B" 19-20 Catalog p. 66).  The Petition for Refund must be submitted within 60 days of the date that the student completed a change of registration. *Id.* The Amended Complaint lacks any allegations that Plaintiff submitted a Petition for Refund, as required under the 19-20 Catalog.

While the Court need not engage in contract interpretation at this stage, a review of the policies explicitly contradicting Plaintiff's claims coupled with Plaintiff's inability to show a contractual provision Defendant allegedly breached, requires dismissal of Count I.

### C.    Plaintiff Cannot Rely on Puffery

"It is well-established that, absent limited exceptions, advertisements do not constitute offers." *Schultz v. Am. Airlines, Inc.*, No. 18-80633-CIV, 2018 WL 7287194, at *3 (S.D. Fla. Sept. 25, 2018), *report and recommendation adopted*, No. 9:18-CV-80633, 2018 WL 7287149 (S.D. Fla. Oct. 11, 2018) *citing Armour Group, Inc. v. Labock*, No. 11-61991, 2012 WL 12837289, at *7 (S.D. Fla. 2012) (explaining that "[u]nder contract law, an advertisement is usually not an offer, but rather a solicitation to bargain"); *see also Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116, 122 (S.D.N.Y. 1999) (applying Florida law and recognizing that "[t]he general rule is that an advertisement does not constitute an offer"). Under Florida law, mere puffery or sales talk is not sufficient to become part of a contract.

*See Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331 (S.D. Fla. 2013) (finding that "in a class of its own" and "the world's ultimate touring motorcycle" are opinions and not statements of fact).

Plaintiff's Amended Complaint does not properly distinguish between a specific contractual provision he claims Defendant has breached and mere puffery. For example, Plaintiff's reference that the University "offers a first-rate education" (Doc. 32 ¶ 13) or "gorgeous residential campuses" (Doc. 32 ¶ 23) cannot be the basis of Plaintiff's contract claim.  Additionally, the photographic images and the "marketing video" (Doc. 32 ¶ 43) are additional sales mechanisms used by the University that in no way relate to a contract between the student and the University.  The mixing of sales talk and puffery in Plaintiff's allegations of a contract further evidences Plaintiff's inability to point to a contractual provision Defendant has allegedly breached.

### D.     The Inclusion of Summer 2020 in the Amended Complaint is Inappropriate

Plaintiff does not allege that he registered for or attended the Summer 2020 term. Plaintiff is required to allege his attendance – or at least his payment – for the Summer 2020 term to state a claim upon which relief can be granted for this time period. *Gaines*, 2014 WL 6882934, at *3. As discussed *infra*, Plaintiff cannot maintain an action for a class if he has no cognizable claim for relief. *Sanford v. MemberWorks, Inc.,* 625 F. 3d 550, 560 (9th Cir. 2010).

Additionally, the allegations of the Amended Complaint clarify that no students had bargained for anything other than the instruction they received in Summer 2020. The Amended Complaint states that on April 15, 2020 – before Summer 2020 classes began – the University notified students that the Summer 2020 classes would be held exclusively

online. (Doc. 32 ¶ 65, 59). Taking these allegations as true, students enrolling in Summer 2020 classes understood they would be taking online classes, and so an action for breach of contract based upon the online instruction cannot be maintained.

> ### E.   Plaintiff's Comparison to the University's Worldwide Program is Misplaced

Plaintiff's theory of Defendant's breach relies upon a lengthy comparison to a separate degree program. However, Plaintiff acknowledges that the University's separate Worldwide program is based upon entirely different contractual provisions from the Daytona Beach or Prescott programs. (Doc. 32 ¶ 21 n.5, 6). Even under the allegations of the Amended Complaint, these programs do not merely differ on whether they are taught live or online. There is "a different application process" to the programs. *Id.* ¶ 23. There are distinct refund policies. *Id.* ¶ 29. There are different academic calendars. *Id.* ¶ 60 ("Students attending Embry-Riddle through the Worldwide & Online program are subject to an entirely different academic calendar. Online undergraduate courses are offered on a rolling basis with new class[sic] starting every month."). There are different instructors. *Id.* ¶ 66.

Despite the differences in the contractual provisions for the programs, Plaintiff asks the Court to impute a pricing structure from one program to another. The application process, refund policy, academic calendar, teachers, and other aspects all make Daytona Beach and Prescott students' relationship with the University completely different from the Worldwide students, and the terms of the Worldwide program cannot form a basis for establishing any breach of contract since "[n]one of those students had applied to, registered for, or were enrolled in Embry-Riddle's Worldwide & Online program." *Id.* ¶ 70; 75.

**IV.       Plaintiff Fails to State a Claim in Count II for Unjust Enrichment**

The elements of unjust enrichment are: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 n.3 (11th Cir. 2011); *Com. P'rship. 8098 Ltd. P'ship. v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997).

"Unjust enrichment is an equitable remedy based on a contract implied in law and is generally unavailable where a contract governs the parties' relationship." *Loc. Access, LLC v. Peerless Network, Inc.*, No. 617-CV-236-ORL-PGB, 2017 WL 7311872, at *3 (M.D. Fla. Dec. 22, 2017). "It is well settled in Florida that... a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316 (11th Cir. 2015).

The entirety of Plaintiff's allegations in Paragraphs 1-105 point to words or conduct evidencing some type of contract between the parties. The Amended Complaint alleges that Plaintiff (and a nascent class) did not receive what they "bargained-for" when they paid tuition and fees. (Doc. 32 ¶ 3, 70). Similarly, Plaintiff contends he did not receive the services for which the parties "contracted" (Doc. 32 ¶ 1, 56, 72, 75), Plaintiff claims he "expressly contracted to attend the University in-person rather than online" (Doc. 32 ¶ 56), and consequently, did not receive the value of what he "bargained for." (Doc. 32 ¶ 76, 121). Plaintiff alleges that students "have not realized and cannot realize the full value of the education, services, and other experiences that they were promised and for which they paid."

(Doc. 32 ¶ 79). These allegations, to the extent they describe anything, describe a contract and cannot support a theory of unjust enrichment. Although Count II purports to be pled as an alternative theory to Count I, "where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal cause of action, it is not a true alternative theory of relief but rather is duplicative of those causes of action and warrants dismissal." *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017); *Weaver v. Mateer & Harbert, P.A.*, No. 5:09-CV-514-OC-34TBS, 2012 WL 3065362, at *11 (M.D. Fla. July 27, 2012), *aff'd*, 523 F. App'x 565 (11th Cir. 2013) ("[A]lthough Plaintiff may be entitled to plead in the alternative, that is not what Plaintiff has done in this case. Plaintiff's unjust enrichment claim relies on the factual predicate common to all its claims.").

Even though Plaintiff's cause of action in Count I for breach of contract should be dismissed for failing to state a claim, Count II is still due to be dismissed because Plaintiff clearly attempts to rely on an alleged "bargained for" and "agreed" "contract" within Count II. (Doc. 32 ¶ 3, 56, 70). *Toca v Tutco, LLC*, 430 F. Supp. 3d 1313, 1327 (S.D. Fla. 2020) ("That the plaintiffs *alleged* such an existence, not necessarily proved, was sufficient to bar them from *also* bringing a claim for unjust enrichment 'on the same factual allegations.'"); *Koski,* 347 F. Supp. 3d at 1195.

Plaintiff's claim for unjust enrichment "necessarily fails upon a showing that an express contract exists." *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012). And it is well-settled that "[u]nder Florida law, the legal relationship between a private university and a student is solely contractual in character." *Sirpal*, 509 F. App'x at 929. Therefore, Count II must be dismissed.

Finally, "[a] party may not assert a claim for unjust enrichment if that same party has derived a substantial benefit from the payment." *Tikiz Franchising, LLC v. Piddington*, No. 17-cv-60552, 2017 WL 8780761, *6 (S.D. Fla Aug. 1, 2017); *Alvarez*, 905 F. Supp. 2d at 1341. In *Alvarez*, plaintiffs sued a cruise line over a "terrible and totally avoidable ordeal" that consisted of the failure to deliver luggage and a generally inferior cruise experience. *Id.* at 1336. The *Alvarez* plaintiffs alleged that defendant cruise line was "unjustly enriched by having been permitted to obtain the full value of the cruise without delivering the required full benefits of the cruise." *Id*. at 1341. The court rejected the unjust enrichment claim because "plaintiffs remained on board the ship for the duration of the cruise which is, presumably, the benefit of a contract for passage by sea." *Id.* Since plaintiffs had received a substantial benefit, failing to receive the "full benefits of the cruise" did not support an unjust enrichment claim. *Id*.

Like *Alvarez*, Plaintiff received a substantial benefit from the University through the completion of his Spring Term 2020, both on-campus and online, including instruction and credits towards graduation. In other words, Plaintiff "remained on board the ship," but now complains he did not get the "full benefits" of an on-campus experience due to an ongoing global pandemic. (Doc. 32 ¶ 50). Since Plaintiff received substantial benefits from the University through the completion of his Spring 2020 term, Count II fails to state a claim.

V.       **Plaintiff Cannot Represent His Class Because the Complaint Fails to State a Claim**

Finally, because Plaintiff has failed to state any viable claim against the University in his individual capacity, it is unnecessary to address the deficiencies in Plaintiff's allegations as to the class he purports to represent. Rather, "[w]hen a named plaintiff has no cognizable claim for

relief, he cannot represent others who may have such a claim, and his bid to serve as a class representative must fail." *Henley v. Turner Broadcasting Sys., Inc.,* 267 F. Supp. 3d 1341, 1357 (N.D. Ga. 2017) (citations omitted); *see also Burks v. Arvest Bank*, No. 4:06-cv-00551, 2006 WL 3512478, at *2 (E.D. Ark. Dec. 6, 2006) ("Since the Court has dismissed the sole named Plaintiff's individual claims, the Court must dismiss the class allegations as well and no notice of this involuntary dismissal need be given to any alleged unnamed class members."). Accordingly, Plaintiff's Amended Complaint should be dismissed with prejudice.

## CONCLUSION

Plaintiff's allegations against the University arise from the University's response to COVID-19. The University used its professional academic judgment in moving in-person classes online so that students would be protected from a deadly virus and be able to continue their studies. Courts have consistently granted deference to these academic judgments, and the unprecedented circumstances present here fully justify the Court extending that deference to the University on Plaintiff's claims. Further, Plaintiff's claims, however styled, collectively allege "educational malpractice" by the University. Such claims are non-actionable under Florida law, and thus, the Complaint should be dismissed with prejudice. Based on the additional deficiencies in the pleadings and other grounds stated in the Motion unique to each count, Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6).

WHEREFORE, the University respectfully requests that the Court dismiss Plaintiff's Amended Complaint with prejudice and grant such other relief deemed just and appropriate.

Respectfully submitted,

**NELSON MULLINS BROAD AND CASSEL**

By: */s/ Shaina Stahl*
**PAUL RENNER**
Florida Bar No.: 40304
*Trial Counsel*
**SHAINA STAHL**
Florida Bar No.: 77643
Nelson Mullins Broad and Cassel
390 North Orange Avenue, Suite 1400
Orlando, Florida 33802-4961
Telephone: (407)839-4200
Facsimile: (407)425 -8377
Primary E-Mail:
paul.renner@nelsonmullins.com
shaina.stahl@nelsonmullins.com
Secondary E-Mail:
allison.abbott@nelsonmullins.com
shawana.watt@nelsonmullins.com

AND

**DANIEL A. COHEN** *(Admitted Pro Hac Vice)*
Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Facsimile:  (404) 322-6050
Primary E-Mail: dan.cohen@nelsonmullins.com
*Attorneys for Defendant,*
*Embry-Riddle Aeronautical University, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on September 10, 2020.  I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Electronic Filing generated by CM/ECF:

Matthew D. Schultz, Esq.                    E. Michelle Drake, Esq.
Levin, Papantonio, Thomas,                  Berger Montague, P.C.
Mitchell, Rafferty & Proctor, P.A.          43 SE Main Street, Suite 505
316 S. Baylen Street, Suite 600             Minneapolis, MN 55414
Pensacola, FL 32502                         emdrake@bm.net
mschultz@levinlaw.com                       *Attorneys for Plaintiff*
*Attorneys for Plaintiff*

Patrick F. Madden, Esq.
Berger Montague, P.C.
1818 Market Street, Suite 3600
Philadelphia, PA 19103
pmadden@bm.net
*Attorneys for Plaintiff*

/s/      Shaina Stahl

4851-2825-3898