**Exhibit A**

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

### Case No. 6:20-cv-00927-PGB-EJK

CHRISTOPHER RHODES,
Individually and on Behalf of All
Others Similarly Situated,

        Plaintiff,

    v.

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY, Inc.,

        Defendant.

**<u>DECLARATION OF PATRICK MADDEN</u>**

I, Patrick Madden, hereby declare as follow:

1.    I represent Plaintiff in the above-reference matter.

2.    I submit this Declaration in Support of Plaintiff's Motion to Compel.

3.    On August 30, 2020, Plaintiff served his Requests for Production, Set I, which Defendant responded to on November 9, 2020. Attached as Exhibit 1 is Plaintiff's First Set Of Requests For Production Of Documents To Defendant and attached as Exhibit 2 is Defendant Embry-Riddle Aeronautical University, Inc.'s Objections And Responses To Plaintiff's First Set Of Requests For Production Of Documents.

4.    On January 7, 2021, Defendant made its first and only document production: a single, undifferentiated 433-page pdf file.

5.    During a meet and confer call on January 20, 2021, Plaintiff raised concerns about the completeness and format of this production, and the parties agreed that (1) they would negotiate a protocol to govern the search for and production of electronically stored information ("ESI Protocol"); future productions would be provided in the format provided for in the ESI Protocol and past productions would be re-produced in conformance with the ESI Protocol; (2) the parties would negotiate a confidentiality agreement; and (3) the parties would jointly request amendment to the schedule in this matter to clarify and extend several deadlines.

6.    After that call, the parties reached agreement on the confidentiality agreement, which was finalized in February 2021.

7.    The parties also worked diligently on the ESI Protocol, holding a number of calls and exchanging numerous drafts, and ultimately reaching agreement on March 24, 2021 Attached as Exhibit 3 is the [Proposed] Agreed Protocol Governing Discovery Of Electronically-Stored Information ESI Protocol.

8.    Despite the parties having reached agreement on the predicate documents (the protective order and the ESI Protocol) for over three weeks, Defendant has (1) failed to re-produce its original 433-page production in a usable format that

complies with the ESI Protocol, and (2) failed to supplement its original production with further responsive materials.

9.      In addition to the technical deficiencies in their production, Defendant failed to produce the vast majority of relevant information sought by Plaintiff's document requests, including:

1.   Information about the student body, including total enrolment numbers, numbers enrolled for online and in-person options, as well as the amount of tuition and fees charged;

2.   Financial information concerning:

   a.  Costs of online vs in-person instruction;

   b.  Costs and savings associate with COVID closures;

   c.  Costs associated with refunding fees and tuition to students; and

   d.  Expenditure of funds for itemized fees; and

3.   Internal emails of any kind, including related to:

   a.  Decision to move classes online;

   b.  Instruction to teachers re: online platforms;

4.   Communications of any kind, including complaints or communications about online education or requests for refunds and responses thereto.

10.    All of this information was requested in Plaintiff's document requests. *See* Exhibit 1.

The foregoing statement is made under penalty of perjury and is true and correct to the best of my knowledge and belief.

Dated: April 16, 2021

Respectfully submitted,

*/s/ Patrick Madden*

Patrick Madden (PHV)
pmadden@bm.net
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

**Exhibit 1**

**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

CHRISTOPHER RHODES, Individually
And on Behalf of All Others Similarly
Situated,

      Plaintiff

v.                                    Case No. 6:20-cv-00927-PGB-EJK

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY,

      Defendant

_____

_____

**PLAINTIFF'S FIRST SET OF REQUESTS
FOR PRODUCTION OF DOCUMENTS TO DEFENDANT**

      Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local

Rule 3.03, Plaintiff hereby serves his First Requests for Production of Documents to

Defendant. Documents and other things requested shall be produced in the time

prescribed by the rules at the offices of Levin, Papantonio, Thomas, Mitchell,

Rafferty & Proctor, P.A., 316 S. Baylen St., Suite 600, Pensacola, FL 32502, or at

such other place and/or time mutually agreed to by the parties.

**DEFINITIONS**

      These terms, as used in these requests, are defined as follows:

1.  **Action** refers to the above-captioned case.

2.  **Any** includes "all" and vice versa.

3.  The terms **and** and **or** are both conjunctive and disjunctive and should be

interpreted so as to give the broadest possible reading to a request.

4.  **Trustees** means the Trustees of Embry-Riddle Aeronautical University, Inc.

5.  **Class** has the definition set forth in Plaintiff's Class Action Complaint in this

action.

6. **Communication(s)** means any transmission, transfer, or exchange of information by any means, including without limitation, any verbal, written, printed, typed, electronic, photographed, recorded, or otherwise reproduced, communication or representation.

7. **Complaint** means the operative Complaint filed by Plaintiff on May 28, 2020.

8. **Concerning**/**concerns** means relating to (relates to) as defined below.

9. **Defendant** means Embry-Riddle Aeronautical University, Inc., including, without limitation, its Trustees, officers, directors, members, employees, agents, representatives, and all other persons acting in concert with it, or under its direction or control, whether directly or indirectly.

10. **Document(s)** includes things (e.g., audio or tape recordings, computer disks, thumb drives, memory cards, etc.) and means all documents, things, and communications subject to production under Federal Rules of Civil Procedure 26 and 34, and thus includes (by way of illustration only and not by way of limitation) any written, printed, recorded, or graphic matter that is or has been in your possession, custody, or control, regardless of the medium on which it is produced, reproduced, or stored, including without limitation: correspondence; records; reports; memoranda; notes; letters; telegrams; messages (including, without limitation, reports of telephone conversations and conferences); text messages; chat messages; facsimile transmission; notebooks of any character; summaries or records of personal conversations; diaries; calendars; desk pads; appointment books; routing slips; publications; computer readable disks and/or drives, tapes or other records; photographs (including photographs taken by a cell phone, iPhone, or iPad, similar device, or other recording device); minutes or records of meetings; transcripts of oral testimony or statements; reports and/or summaries of interviews; reports and/or summaries of investigations; agreements and contracts, including all modifications

and/or revisions thereof; court papers; cancelled or un-cancelled checks; brochures; pamphlets; press releases; drafts of, revisions of drafts of, or translations of, any document; tape recordings; records; dictation belts, emails and other electronic documents. The scope of email and other electronic documents includes documents on any personal laptop, home computer, removable media devices (floppy disks, tapes, CD ROMS, DVDs, zip disks and/or drives, flash drives and other removable drives), personal digital assistants or similar devices (such as a Palm Pilot or Blackberry), or any other storage medium or any other electronically-stored information. Any document with any marks on any sheet or side thereof, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment or any notation of any character and not a part of the original text, or any reproduction thereof, is to be considered a separate document for purposes of these Requests.

11. **Including** means "including without limitation" aka "including, but not limited to."

12. **Person(s)** means any individual, firm, trust, partnership, corporation, proprietorship, limited liability company, association, joint venture, governmental body, or other organization or entity of any kind.

13. The terms **relate(s)** and **relating** mean and include constituting, referring to, concerning, indicating, responding to, pertaining to, in connection with, evidencing, reflecting, embodying, identifying, incorporating, dealing with, discussing, showing, implying, analyzing, or describing, whether directly or indirectly.

14. **Senior Administration** means the individuals responsible for managing the University's institutional operations, including without limitation, all groups and individuals responsible for formulating, approving, and implementing the University's policies in response to COVID-19, including decisions regarding changes to or reimbursement of tuition and fees.

15. **University** means Embry-Riddle Aeronautical University, Inc.

16. The terms **you** and **your** refer to Defendant as defined above.

## INSTRUCTIONS

1. These Requests cover all documents and things in your actual or constructive possession, custody, or control.

2. Please produce Electronically Stored Information ("ESI") in the format to be agreed upon between the parties and/or as ordered by the Court.

3. Duplicates and unthreaded documents are distinct documents. Please do not de-duplicate or thread any documents/ESI before producing unless in accordance with a case-specific ESI stipulation or order.

4. If an original document is in color, please produce a color copy of the document.

5. Unless otherwise specified, the time period encompassed by these Requests is January 1, 2019, through present. Please produce responsive documents that relate to the Relevant Time Period irrespective of the date of the document.

## REQUESTS FOR PRODUCTION

Please produce legible/audible copies of the following:

1. All documents related to Plaintiff's acceptance, registration, and attendance at the University, including Plaintiff's application to and correspondence with your admissions and financial aid offices; Plaintiff's billing, academic, and disciplinary records; and communications between Plaintiff and the University regarding COVID-19, the suspension of on-campus operations, or the transition to online instruction.

2. All other documents created, generated, or obtained before this action was filed that contain Plaintiff's name or other unique identifying information for Plaintiff.

3.   Documents sufficient **(a)** to identify each and every type of fee charged by the University to any or all students for the Spring 2020 term and the Summer 2020 term (including information from the Fall 2019 term if charged at that time for the 2019-2020 academic year); **(b)** to identify which types or groups of students (e.g., online M.S. Aeronautics students, on-campus B.S. Meteorology students) were charged which fees; and **(c)** the amount of each such fee.

4.   Documents sufficient to identify  the amount of tuition charged by the University for the Spring 2020 term and the Summer 2020 term (including information from the Fall 2019 term if charged at that time for the 2019-2020 academic year) to each and every type or group of students (e.g., online M.S. Aeronautics students, on-campus B.S. Meteorology students).

5.   Documents sufficient to show the basis and method you used to calculate or determine the **(a)** tuition, **(b)** course-related or academic fees, and **(c)** non-academic fees that the University charged students for each academic program offered, both online and on-campus, during the Spring and Summer 2020 terms, without regard to the date such documents were created.

6.   Documents sufficient to show the fees charged to non-students for use of the University's on-campus amenities or facilities during the 2019-2020 academic year, without regard to the date such documents were created.

7.   Documents sufficient to show the fees, if any, charged only to off-campus students for use of the University's on-campus amenities or facilities during the 2019-2020 academic year, without regard to the date such documents were created.

8.   Documents sufficient to show **(a)** whether any refunds or monetary credits were offered or issued to the Class as a result of institutional changes made in response to COVID-19; **(b)** the per-capita amount and total amount of any or all such refunds or credits; and **(c)** the source of funding for any or all such refunds or credits.

9.   All agendas, minutes, action items, resolutions, memoranda, and other documents relating to any or all Senior Administration or Trustees' meetings that occurred during the relevant time period.

10.   All documents, including email, correspondence, chat messages, text messages, and other communications by, among, or between Senior Administration and/or Trustees concerning the University's consideration of and decisions concerning **(a)** suspending on-campus operations and transitioning to online instruction in the Spring of 2020; and **(b)** refunding or crediting (or not) any portion of tuition, fees, and/or other costs to students as a result.

11.   All communications by, among, or between you and **(a)** students, **(b)** students' families, **(c)** professors, instructors, counselors, coaches, tutors, teaching assistants, or other academic staff, and **(d)** non-academic staff concerning COVID-19 and the University's decision to suspend on-campus operations and transition to online instruction. This request includes all COVID-related communications by you to those identified above and documents evidencing or constituting the following, as well as your responses to same: University students' and families' **(i)** requests for or inquiries concerning refunds of fees and/or tuition; **(ii)** complaints and concerns relating to the provision of online instruction; and **(iii)** financial hardship due to COVID-19.

12.   Documents sufficient to show when and how the University trained, prepared, and supported professors, instructors, counselors, tutors, teaching assistants, or other academic staff to provide the online instruction that occurred following the suspension of on-campus operations.

13.   All policies, procedures, guidelines, and other documents intended to establish, maintain, monitor, or evaluate the quality of online instruction that occurred following the suspension of on-campus operations.

14.    All course evaluations or assessments performed by instructors, staff, students, or any third-party consultant, relating to online instruction, including the results of any surveys the University conducted.

15.    Documents from the period January 1, 2015, to the University's suspension of on-campus operations in the Spring of 2020 sufficient to show the steps the University took: **(a)** to determine whether any course or program was appropriate for online delivery and, if so, **(b)** to design the course or program for online delivery, and **(c)** to recruit, train, and support professors, instructors, counselors, coaches, tutors, teaching assistants, or other academic staff to teach online courses.

16.    All documents, including emails, correspondence, chat messages, text messages, and all other communications by, among, or between Senior Administration and/or Trustees, reflecting any evaluation, discussion, or consideration of the difference in value between courses offered online (either by you or other colleges or universities) and courses offered on-campus (either by you or other colleges or universities), including the University's evaluation and decision to charge less in tuition and fees for courses offered online than courses offered on-campus, without regard to the date such documents were created.

17.    Documents, including organizational charts or similar documents, sufficient to show the reporting structure for administrative, fiscal, and budgetary functions at the University.

18.    All University marketing materials, catalogs, student manuals, student handbooks, and other university publications, policies, and procedures that were **(a)** provided to any or all students and prospective students during the relevant time period and/or **(b)** in effect during the Spring or Summer 2020 terms, without regard to the date such documents were created.

19.   A copy of the University's website, including all video content, as well as any changes made to the website following the University's decision to suspend on-campus operations during the Spring 2020 term.

20.   All University student bulletin board, chat room, or other community discussion forum messages concerning the suspension of on-campus operations, the provision of online courses, and/or potential or actual reimbursement of tuition and/or fees for the Spring and Summer 2020 terms.

21.   Documents sufficient to show any differences in costs incurred by the University to provide classes online and on-campus.

22.   Documents sufficient to show net financial gains or losses to the University as a result of suspending on-campus operations in the Spring of 2020.

23.   Documents sufficient to show the University's spending on infrastructure and other items related to the provision of an on-campus, in-person education prior to the suspension of on-campus operations in the Spring of 2020. This Request specifically includes audited financial statements from 2017 to the present, including profit and loss statements, income statements, cash flow reports, general ledger entries, and any reports regarding University revenues and expenses prepared in the regular course of business, without regard to whether such reports are specific to the impact of COVID-19 or the suspension of on-campus operations.

24.   Documents sufficient to show any changes to academic and non-academic staffing and compensation resulting from the suspension of on-campus in the Spring of 2020.

25.   All documents relating to the University's consideration, decision, and announcement **(a)** to re-open its campus in August 2020 and **(b)** to offer the option of remote instruction.

26.   All documents relating to the University's consideration, decision, and announcement not to charge a reduced tuition rate for undergraduate students who choose to participate in remote instruction during the Fall 2020 term, including all documents reflecting consideration of the question and the reasons for the University's final decision in this regard and all documents relating in any way to the financial consequences of offering or not offering reduced tuition.

27.   Documents sufficient to show any change in enrollment at the University that you attribute to COVID-19.

28.   All documents concerning any University document retention/destruction policy from 2015 to the present, including, but not limited to, the policies themselves and any communications since March 1, 2020, concerning any change to any document retention/destruction policy.

29.   All policies and procedures that you have had in place for the past 12 months relating to the storage, deletion, and back-up of documents and data relevant to the issues raised in this action, including but not limited to, use of and application to network servers, other network storage devices, network drives, hard drives, databases, intranets, email, instant messaging, text messaging, SLACK, voicemails (including voicemail to email integration), mobile applications, enterprise software, operating systems, data repositories, portable devices, and collaborative or cloud-storage software or platforms, including, e.g., BOX, Dropbox, SharePoint, Microsoft Teams, OneNote, Evernote, ShareFile, iDrive, pCloud, OneDrive, iCloud, Google Drive, Mega, etc. This request expressly includes current and legacy sources.

30.   Complete copies, including declarations, of every policy of insurance you contend covers or may cover you for the allegations set forth in the complaint, including any denial of coverage or reservation of rights you have received in connection with this action.

31.   Documents sufficient to show your insurance policies, declarations, and any correspondence with any insurance provider regarding claims for business interruption coverage, business interruption coverage payments, or any other coverage claims or payments related to losses you have suffered related to Coronavirus, COVID-19, or governmental action.

32.   Your application(s) for CARES Act funding.

33.   Documents sufficient **(a)** to identify all relief, funds, payments, reimbursements, awards, loans, or other benefits received by the University pursuant to the CARES Act or any other program related to Coronavirus, COVID-19, or governmental action; **(b)** to identify any restrictions on the University's use of such funds; and **(c)** to identify how the University used such funds.

Dated:  August 13, 2020.

*s/Matthew D. Schultz*
Matthew D. Schultz (FBN 0640328)
**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**
mschultz@levinlaw.com
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Tel (850) 435-7140
Fax (850) 436-6140

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served on the

following by email this 13th day of August, 2020.

Paul Renner, Esq.
 *paul.renner@nelsonmullins.com*
Shaina Stahl, Esq.
 *shaina.stahl@nelsonmullins.com*
Daniel A. Cohen, Esq.
 *dan.cohen@nelsonmullins.com*
NELSON MULLINS RILEY
& SCARBOROUGH LLP
390 N. Orange Avenue, Suite 1400
Orlando, FL 32801

*s/Matthew D. Schultz*
Matthew D. Schultz (FBN 0640328)
**LEVIN, PAPANTONIO, THOMAS,**
**MITCHELL, RAFFERTY & PROCTOR, P.A.**
mschultz@levinlaw.com
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Tel (850) 435-7140
Fax (850) 436-6140

**Exhibit 2**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CHRISTOPHER RHODES, individually
and on behalf of all others similarly
situated,

                Plaintiff,

vs.                                                    CASE NO. 6:20-cv-00927-PGB-EJK

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY, INC.,

                Defendant.

_____/

## DEFENDANT EMBRY-RIDDLE AERONAUTICAL UNIVERSITY, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Embry-Riddle Aeronautical University, Inc. ("Defendant" or "ERAU"), Defendant in the above-styled action, and pursuant to Rule 34 of the Federal Rules of Civil Procedure, submits its objections and responses to Plaintiff's First Set of Requests for Production of Documents to Defendant (the "Requests") as follows:

## RESPONSE TO DOCUMENT REQUESTS

### REQUEST NO. 1:

All documents related to Plaintiff's acceptance, registration, and attendance at the University, including Plaintiff's application to and correspondence with your admissions and financial aid offices; Plaintiff's billing, academic, and disciplinary records; and communications between Plaintiff and the University regarding COVID-19, the suspension of on-campus operations, or the transition to online instruction.

**RESPONSE:  ERAU objects to this Request on the grounds that it exceeds the current scope of discovery, which is limited to issues of class certification, pursuant to the Court's Case Management and Scheduling Order. (Doc. 39 at 2.) Specifically, Plaintiff's post-COVID-19 communications with ERAU do not reasonably relate to the issue of class certification. Subject to the foregoing objections, ERAU will make all other responsive documents available for inspection at a mutually convenient time and place.**

**REQUEST NO. 2:**

All other documents created, generated, or obtained before this action was filed that contain Plaintiff's name or other unique identifying information for Plaintiff.

**RESPONSE: ERAU objects to this Request on the grounds that it exceeds the current scope of discovery, which is limited to issues of class certification, pursuant to the Court's Case Management and Scheduling Order. (Doc. 39 at 2.) ERAU further objects to this Request on the grounds that it seeks documents not relevant to any claim or defense in this litigation and is not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1). Specifically, this Request calls for documents that have no bearing on Plaintiff's breach-of-contract or unjust enrichment claims, much less class certification. Subject to the foregoing objections, ERAU will make Plaintiff's billing, academic, and disciplinary records available for inspection at a mutually convenient time and place.**

**REQUEST NO. 3:**

Documents sufficient (a) to identify each and every type of fee charged by the University to any or all students for the Spring 2020 term and the Summer 2020 term (including information from the Fall 2019 term if charged at that time for the 2019-2020 academic year); (b) to identify which types or groups of students (e.g., online M.S. Aeronautics students, on-campus B.S. Meteorology students) were charged which fees; and (c) the amount of each such fee.

**RESPONSE:  ERAU objects to this Request to the extent it calls for attorney-work product prepared by counsel in anticipation of litigation. Additionally, ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. Subject to the foregoing objections, ERAU will make non-privileged responsive documents available for inspection at a mutually convenient time and place.**

**REQUEST NO. 4:**

Documents sufficient to identify the amount of tuition charged by the University for the Spring 2020 term and the Summer 2020 term (including information from the Fall 2019 term if charged at that time for the 2019-2020 academic year) to each and every type or group of students (e.g., online M.S. Aeronautics students, on-campus B.S. Meteorology students).

**RESPONSE: ERAU objects to this Request to the extent it calls for attorney-work product prepared by counsel in anticipation of litigation. Additionally, ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. Subject to the foregoing objections, ERAU will make**

non-privileged responsive documents available for inspection at a mutually convenient time and place.

**REQUEST NO. 5:**

Documents sufficient to show the basis and method you used to calculate or determine the (a) tuition, (b) course-related or academic fees, and (c) non-academic fees that the University charged students for each academic program offered, both online and on-campus, during the Spring and Summer 2020 terms, without regard to the date such documents were created.

**RESPONSE: ERAU objects to this Request to the extent it calls for attorney-work product prepared by counsel in anticipation of litigation. Additionally, ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. Subject to the foregoing objections, ERAU will make non-privileged responsive documents available for inspection at a mutually convenient time and place.**

**REQUEST NO. 6:**

Documents sufficient to show the fees charged to non-students for use of the University's on-campus amenities or facilities during the 2019-2020 academic year, without regard to the date such documents were created.

**RESPONSE:  ERAU objects to this Request on the grounds that it exceeds the current scope of discovery, which is limited to issues of class certification, pursuant to the Court's Case Management and Scheduling Order. (Doc. 39 at 2.) Additionally, ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information**

**as overly burdensome and duplicative. ERAU further objects to the extent that non-students**

**are not defined and are ambiguous. ERAU further objects to this Request on the grounds that**

**it seeks documents not relevant to any claim or defense in this litigation and is not proportional**

**to the needs of the case.** *See* **Fed. R. Civ. P. 26(b)(1). Specifically, fees charged to non-students**

**have no bearing on Plaintiff's breach-of-contract or unjust enrichment claims, much less class**

**certification.**

REQUEST NO. 7:

Documents sufficient to show the fees, if any, charged only to off-campus students for use of

the University's on-campus amenities or facilities during the 2019-2020 academic year, without regard

to the date such documents were created.

RESPONSE: ERAU objects to this Request to the extent it calls for attorney-work product

**prepared by counsel in anticipation of litigation. Additionally, ERAU objects to this Request**

**to the extent it would call for all documents tending to show the above requested information**

**as overly burdensome and duplicative. Subject to the foregoing objections, ERAU will make**

**non-privileged responsive documents available for inspection at a mutually convenient time**

**and place.**

REQUEST NO. 8:

Documents sufficient to show (a) whether any refunds or monetary credits were offered or

issued to the Class as a result of institutional changes made in response to COVID-19; (b) the per-

capita amount and total amount of any or all such refunds or credits; and (c) the source of funding

for any or all such refunds or credits.

**RESPONSE: ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. ERAU will make responsive documents available for inspection at a mutually convenient time and place.**

**REQUEST NO. 9:**

All agendas, minutes, action items, resolutions, memoranda, and other documents relating to any or all Senior Administration or Trustees' meetings that occurred during the relevant time period.

**RESPONSE: ERAU objects to this Request on the grounds that it exceeds the current scope of discovery, which is limited to issues of class certification, pursuant to the Court's Case Management and Scheduling Order. (Doc. 39 at 2.) ERAU further objects to this Request on the grounds that it seeks documents not relevant to any claim or defense in this litigation and is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Specifically, meetings amongst Senior Administration or Trustees that have no bearing on Plaintiff's breach-of-contract or unjust enrichment claims, much less class certification are not discoverable.**

**REQUEST NO. 10:**

All documents, including email, correspondence, chat messages, text messages, and other communications by, among, or between Senior Administration and/or Trustees concerning the University's consideration of and decisions concerning (a) suspending on-campus operations and transitioning to online instruction in the Spring of 2020; and (b) refunding or crediting (or not) any portion of tuition, fees, and/or other costs to students as a result.

**RESPONSE:** ERAU objects to this Request on the grounds that it calls for attorney-client privileged communications. ERAU also objects that the request is ambiguous in that the "University's consideration" is not defined. ERAU additionally objects that producing all documents is overly burdensome and not proportional to the needs of the case. ERAU further objects that it exceeds the current scope of discovery, which is limited to issues of class certification, pursuant to the Court's Case Management and Scheduling Order. (Doc. 39 at 2.) ERAU also objects that it seeks documents not relevant to any claim or defense in this litigation and is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Specifically, internal communications by, amongst, or between Senior Administration and Trustees have no bearing on Plaintiff's breach-of-contract or unjust enrichment claims, much less class certification.

**REQUEST NO. 11:**

All communications by, among, or between you and (a) students, (b) students' families, (c) professors, instructors, counselors, coaches, tutors, teaching assistants, or other academic staff, and (d) non-academic staff concerning COVID-19 and the University's decision to suspend on-campus operations and transition to online instruction. This request includes all COVID-related communications by you to those identified above and documents evidencing or constituting the following, as well as your responses to same: University students' and families' (i) requests for or inquiries concerning refunds of fees and/or tuition; (ii) complaints and concerns relating to the provision of online instruction; and (iii) financial hardship due to COVID-19.

**RESPONSE:** ERAU objects to this Request on the grounds that it exceeds the current scope of discovery, which is limited to issues of class certification, pursuant to the Court's Case Management and Scheduling Order. (Doc. 39 at 2.) ERAU further objects to this Request on the

-7-

**grounds that it seeks documents not relevant to any claim or defense in this litigation and is not proportional to the needs of the case.** *See* **Fed. R. Civ. P. 26(b)(1). Specifically, the requested communications have no bearing on Plaintiff's breach-of-contract or unjust enrichment claims, much less class certification. And even if such communications had some relevance, the Request is overbroad and unduly burdensome because it essentially calls for all communications ERAU has had with staff, students, and families relating to COVID-19.  ERAU will agree to produce copies of general student-body communications regarding COVID-19.**

**REQUEST NO. 12:**

Documents sufficient to show when and how the University trained, prepared, and supported professors, instructors, counselors, tutors, teaching assistants, or other academic staff to provide the online instruction that occurred following the suspension of on-campus operations.

**RESPONSE:  ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. ERAU will make responsive documents available for inspection at a mutually convenient time and place.**

**REQUEST NO. 13:**

All policies, procedures, guidelines, and other documents intended to establish, maintain, monitor, or evaluate the quality of online instruction that occurred following the suspension of on-campus operations.

-8-

**RESPONSE**: At this time, there are no documents responsive to this request.  Should there be responsive documents, ERAU will make all responsive documents available for inspection at a mutually convenient time and place.

**REQUEST NO. 14:**

All course evaluations or assessments performed by instructors, staff, students, or any third-party consultant, relating to online instruction, including the results of any surveys the University conducted.

**RESPONSE:**  ERAU objects to this Request on the grounds that it exceeds the current scope of discovery, which is limited to issues of class certification, pursuant to the Court's Case Management and Scheduling Order. (Doc. 39 at 2.) ERAU objects that the request is not reasonably limited in time or scope.  ERAU objects that the request is ambiguous in that evaluations or assessment is not defined and could include materials outside the scope of discovery. ERAU further objects that the request is ambiguous and overbroad to the extent it seeks documents "relating to online instruction," which could include materials outside the scope of discovery. ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. ERAU further objects to this Request on the grounds that it seeks documents not relevant to any claim or defense in this litigation and is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Specifically, students' subjective satisfaction or dissatisfaction with their professors and courses has no bearing on Plaintiff's breach-of-contract or unjust enrichment claims, much less class certification.

**REQUEST NO. 15:**

Documents from the period January 1, 2015, to the University's suspension of on-campus operations in the Spring of 2020 sufficient to show the steps the University took: (a) to determine whether any course or program was appropriate for online delivery and, if so, (b) to design the course or program for online delivery, and (c) to recruit, train, and support professors, instructors, counselors, coaches, tutors, teaching assistants, or other academic staff to teach online courses.

**RESPONSE: ERAU objects that the request is not reasonably limited in time or scope and that requesting five years of documents is overbroad and unduly burdensome.  ERAU objects that the request is ambiguous in that "course or program" is not defined and could include materials outside the scope of discovery. ERAU further objects that the request is ambiguous as to the term "appropriate for online delivery," which could include materials outside the scope of discovery. ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. At this time, ERAU has not identified any documents that would be responsive to this Request.**

**REQUEST NO. 16:**

All documents, including emails, correspondence, chat messages, text messages, and all other communications by, among, or between Senior Administration and/or Trustees, reflecting any evaluation, discussion, or consideration of the difference in value between courses offered online (either by you or other colleges or universities) and courses offered on-campus (either by you or other colleges or universities), including the University's evaluation and decision to charge less in tuition and fees for courses offered online than courses offered on-campus, without regard to the date such documents were created.

**RESPONSE:** ERAU objects to this Request on the grounds that it exceeds the current scope of discovery, which is limited to issues of class certification, pursuant to the Court's Case Management and Scheduling Order. (Doc. 39 at 2.) ERAU further objects to this Request on the grounds that it seeks documents not relevant to any claim or defense in this litigation and is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). ERAU objects that the Request is not reasonably limited in time, scope, or individuals. Specifically, the Request is overbroad and unduly burdensome in its request for ESI. And searching individuals' mobile devices for "chat messages" or text messages would be unduly burdensome and unreasonably invasive. Subject to the foregoing objections, ERAU will agree to search for and produce all non-privileged internal memoranda relating to the requested subject-matter and will then conduct a reasonably diligent search for all non-privileged emails relating to those memoranda.

**REQUEST NO. 17:**

Documents, including organizational charts or similar documents, sufficient to show the reporting structure for administrative, fiscal, and budgetary functions at the University.

**RESPONSE:** ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. ERAU additionally objects that the Request is not reasonably limited in time. Subject to the forgoing objections, ERAU will make responsive documents available for inspection at a mutually convenient time and place.

-11-

**REQUEST NO. 18:**

All University marketing materials, catalogs, student manuals, student handbooks, and other university publications, policies, and procedures that were (a) provided to any or all students and prospective students during the relevant time period and/or (b) in effect during the Spring or Summer 2020 terms, without regard to the date such documents were created.

**RESPONSE: ERAU will make all responsive documents available for inspection at a mutually convenient time and place.**

**REQUEST NO. 19:**

A copy of the University's website, including all video content, as well as any changes made to the website following the University's decision to suspend on-campus operations during the Spring 2020 term.

**RESPONSE: ERAU objects to this Request because it is not proportional to the needs of the case. Specifically, Plaintiff and his attorneys have equal access to ERAU's website, and they are able to gather any responsive information themselves.**

**REQUEST NO. 20:**

All University student bulletin board, chat room, or other community discussion forum messages concerning the suspension of on-campus operations, the provision of online courses, and/or potential or actual reimbursement of tuition and/or fees for the Spring and Summer 2020 terms.

**RESPONSE:  ERAU objects to this Request on the grounds that it exceeds the current scope of discovery, which is limited to issues of class certification, pursuant to the Court's Case**

Management and Scheduling Order. (Doc. 39 at 2.) ERAU objects to this request as vague in that "student bulletin board, chat room, or other community discussion forum" is not defined and includes information outside the possession, custody, or control of ERAU. ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. ERAU further objects to this Request on the grounds that it seeks documents not relevant to any claim or defense in this litigation and is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Specifically, student bulletin boards, chat rooms, or community discussions have no bearing on Plaintiff's breach-of-contract or unjust enrichment claims, much less class certification.  Subject to the forgoing objections, ERAU will make documents in its possession responsive to this request available for inspection at a mutually convenient time and place.

**REQUEST NO. 21:**

Documents sufficient to show any differences in costs incurred by the University to provide classes online and on-campus.

**RESPONSE:** ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. ERAU objects to this Request to the extent it seeks protected University financial documents not proportional to the needs of the case. Subject to the forgoing objections, ERAU will make some responsive documents available for inspection at a mutually convenient time and place.

**REQUEST NO. 22:**

Documents sufficient to show net financial gains or losses to the University as a result of suspending on-campus operations in the Spring of 2020.

**RESPONSE:  ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. ERAU will make responsive documents available for inspection at a mutually convenient time and place.**

**REQUEST NO. 23:**

Documents sufficient to show the University's spending on infrastructure and other items related to the provision of an on-campus, in-person education prior to the suspension of on-campus operations in the Spring of 2020. This Request specifically includes audited financial statements from 2017 to the present, including profit and loss statements, income statements, cash flow reports, general ledger entries, and any reports regarding University revenues and expenses prepared in the regular course of business, without regard to whether such reports are specific to the impact of COVID-19 or the suspension of on-campus operations.

**RESPONSE: ERAU objects to this Requests on the grounds that it is ambiguous in that "infrastructure and other items" is not a defined term. ERAU objects to this Request on the grounds that it exceeds the current scope of discovery, which is limited to issues of class certification, pursuant to the Court's Case Management and Scheduling Order. (Doc. 39 at 2.) ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. ERAU further objects to this Request on the grounds that it seeks documents not relevant to any claim or**

defense in this litigation and is not proportional to the needs of the case. *See* **Fed. R. Civ. P.
26(b)(1). Specifically, ERAU's financial statements and other accounting records have no
bearing on Plaintiff's breach-of-contract or unjust enrichment claims, much less class
certification. The Request is also premature at this stage of the litigation, as it appears calculated
only discover ERAU's assets and worldly circumstances.**

**REQUEST NO. 24:**

Documents sufficient to show any changes to academic and non-academic staffing and
compensation resulting from the suspension of on-campus in the Spring of 2020.

**RESPONSE:  ERAU objects to this Request to the extent it would call for all documents
tending to show the above requested information as overly burdensome and duplicative.
ERAU objects to the extent is ambiguous in that changes in staffing are not necessarily
resulting from "the suspension of on-campus." ERAU will make responsive documents
available for inspection at a mutually convenient time and place.**

**REQUEST NO. 25:**

All documents relating to the University's consideration, decision, and announcement (a) to
re-open its campus in August 2020 and (b) to offer the option of remote instruction.

**RESPONSE: ERAU objects to this Request on the grounds to the extent it calls for attorney-
client privileged communications. ERAU objects to this Request to the extent it would call
for all documents tending to show the above requested information as overly burdensome
and duplicative. ERAU further objects that it exceeds the current scope of discovery, which
is limited to issues of class certification, pursuant to the Court's Case Management and**

**Scheduling Order. (Doc. 39 at 2.) ERAU also objects that it seeks documents not relevant to any claim or defense in this litigation and is not proportional to the needs of the case.** *See* **Fed. R. Civ. P. 26(b)(1). Subject to the foregoing objections, ERAU will produce copies of all public announcements it made to students regarding the requested subject-matter.**

<u>**REQUEST NO. 26**</u>**:**

All documents relating to the University's consideration, decision, and announcement not to charge a reduced tuition rate for undergraduate students who choose to participate in remote instruction during the Fall 2020 term, including all documents reflecting consideration of the question and the reasons for the University's final decision in this regard and all documents relating in any way to the financial consequences of offering or not offering reduced tuition.

<u>**RESPONSE**</u>**:  ERAU objects to this Request on the grounds to the extent it calls for attorney-client privileged communications. ERAU further objects that it exceeds the current scope of discovery, which is limited to issues of class certification, pursuant to the Court's Case Management and Scheduling Order. (Doc. 39 at 2.) ERAU also objects that it seeks documents not relevant to any claim or defense in this litigation and is not proportional to the needs of the case.** *See* **Fed. R. Civ. P. 26(b)(1). ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. Subject to the foregoing objections, ERAU will produce copies of all public announcements it made to students regarding the requested subject-matter.**

-16-

**REQUEST NO. 27:**

Documents sufficient to show any change in enrollment at the University that you attribute to COVID-19.

**RESPONSE**: **ERAU objects to this Request on the grounds that it exceeds the current scope of discovery, which is limited to issues of class certification, pursuant to the Court's Case Management and Scheduling Order. (Doc. 39 at 2.) ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. ERAU further objects to this Request on the grounds that it seeks documents not relevant to any claim or defense in this litigation and is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Specifically, ERAU's internal assessment of any impact COVID-19 has had on enrollment has no bearing on Plaintiff's breach-of-contract or unjust enrichment claims, much less class certification.**

**REQUEST NO. 28:**

All documents concerning any University document retention/destruction policy from 2015 to the present, including, but not limited to, the policies themselves and any communications since March 1, 2020, concerning any change to any document retention/destruction policy.

**RESPONSE**: **ERAU objects to this Request on the grounds that it exceeds the current scope of discovery, which is limited to issues of class certification, pursuant to the Court's Case Management and Scheduling Order. (Doc. 39 at 2.) ERAU objects to the request in that it is not reasonably restricted in time. ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. ERAU further objects to this Request on the grounds that it seeks documents not**

relevant to any claim or defense in this litigation and is not proportional to the needs of the case. *See* **Fed. R. Civ. P. 26(b)(1). Specifically, the Request is overbroad and unduly burdensome by seeking documents relating to document retention policies predating any of the events giving rise to this litigation, as well as internal communications regarding any changes contemplated under those policies. Such documents have no bearing on Plaintiff's breach-of-contract or unjust enrichment claims, much less class certification. Subject to the foregoing objections, ERAU will produce copies of all versions of its document retention policy in effect since January 1, 2019.**

## REQUEST NO. 29:

All policies and procedures that you have had in place for the past 12 months relating to the storage, deletion, and back-up of documents and data relevant to the issues raised in this action, including but not limited to, use of and application to network servers, other network storage devices, network drives, hard drives, databases, intranets, email, instant messaging, text messaging, SLACK, voicemails (including voicemail to email integration), mobile applications, enterprise software, operating systems, data repositories, portable devices, and collaborative or cloud-storage software or platforms, including, e.g., BOX, Dropbox, SharePoint, Microsoft Teams, OneNote, Evernote, ShareFile, iDrive, pCloud, OneDrive, iCloud, Google Drive, Mega, etc. This request expressly includes current and legacy sources.

**RESPONSE**: **ERAU will make all responsive documents available for inspection at a mutually convenient time and place.**

**REQUEST NO. 30:**

Complete copies, including declarations, of every policy of insurance you contend covers or may cover you for the allegations set forth in the complaint, including any denial of coverage or reservation of rights you have received in connection with this action.

**RESPONSE: ERAU has no documents responsive to this Request.**

**REQUEST NO. 31:**

Documents sufficient to show your insurance policies, declarations, and any correspondence with any insurance provider regarding claims for business interruption coverage, business interruption coverage payments, or any other coverage claims or payments related to losses you have suffered related to Coronavirus, COVID-19, or governmental action.

**RESPONSE: ERAU has no documents responsive to this Request.**

**REQUEST NO. 32:**

Your application(s) for CARES Act funding.

**RESPONSE: ERAU will make all responsive documents available for inspection at a mutually convenient time and place.**

**REQUEST NO. 33:**

Documents sufficient (a) to identify all relief, funds, payments, reimbursements, awards, loans, or other benefits received by the University pursuant to the CARES Act or any other program related to Coronavirus, COVID-19, or governmental action; (b) to identify any restrictions on the University's use of such funds; and (c) to identify how the University used such funds.

**RESPONSE**: ERAU objects to this Request to the extent it would call for all documents tending to show the above requested information as overly burdensome and duplicative. ERAU will make responsive documents available for inspection at a mutually convenient time and place.

This 9th day of November 2020.

**NELSON MULLINS BROAD & CASSEL**
*Attorneys for Defendant,*
*Embry-Riddle Aeronautical University, Inc.*

By:     */s/ Shaina Stahl*
**Paul Renner**
Florida Bar No. 40304
*(Lead Trial Counsel)*
**Shaina Stahl**
Florida Bar No. 77643
390 N. Orange Avenue, Suite 1400
Orlando, FL 32801
Telephone: (407) 839-4200
Facsimile: (407) 425 -8377
Primary E-Mail: paul.renner@nelsonmullins.com
                        shaina.stahl@nelsonmullins.com
Secondary:        Allison.Abbott@nelsonmullins.com
                        Shawana.watt@nelsonmullins.com

**Daniel A. Cohen** *(Admitted Pro Hac Vice)*
Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Facsimile:  (404) 322-6050
Primary E-Mail: dan.cohen@nelsonmullins.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of November 2020, I served the within and foregoing DEFENDANT EMBRY-RIDDLE AERONAUTICAL UNIVERSITY, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTIONOF DOCUMENTS by electronic mail to the following:

Matthew D. Schultz, Esq.
Rebecca K. Timmons, Esq.
Levin, Papantonio, Thomas,
   Mitchell, Rafferty & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
mschultz@levinlaw.com
btimmons@levinlaw.com
*Attorneys for Plaintiff*

Patrick F. Madden, Esq.
Berger Montague, P.C.
1818 Market Street, Suite 3600
Philadelphia, PA 19103
pmadden@bm.net
*Attorneys for Plaintiff*

E. Michelle Drake, Esq.
Berger Montague, P.C.
43 SE Main Street, Suite 505
Minneapolis, MN 55414
emdrake@bm.net
*Attorneys for Plaintiff*

         */s/ Shaina Stahl*
           Attorney

4853-2622-8175

**Exhibit 3**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CHRISTOPHER RHODES, Individually and
on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

EMBRY-RIDDLE AERONAUTICAL
UNIVERSITY, INC.,

      Defendant.

Case No.  6:20-cv-927

## [PROPOSED] AGREED PROTOCOL GOVERNING DISCOVERY OF ELECTRONICALLY-STORED INFORMATION (ESI PROTOCOL)

Pursuant to Fed. R. Civ. P. 26(f), the Parties mutually agree on the protocol for the production of discovery material in this action, including electronically stored information (ESI) ("Protocol") described below. This Protocol is intended to streamline discovery to best carry out the requirements set forth in Local Rule 3.02, Middle District Discovery (2021) at Sections III, VI and VIII, and the Federal Rules of Civil Procedure. This Protocol shall not enlarge the scope of discovery as imposed by the rules governing this matter, court orders, or as agreed to between the Parties. The Parties shall meet and confer to try to resolve any disputes that may arise under this Protocol prior to seeking intervention from the Court.

### 1.    LIMITATIONS AND NON-WAIVER

The Parties and their attorneys do not intend by establishing and complying with this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege

or the attorney work product doctrine.  All documents produced hereunder are produced subject to any protective orders or confidentiality agreements entered into by the Parties in this matter.

## 2.    DUTY OF COOPERATION

The Parties acknowledge their duty to work together cooperatively throughout the discovery process.

## 3.    ESI LIAISONS

To promote transparency, communication, and cooperation between the Parties, the Parties shall designate e-discovery liaisons for purposes of meeting and conferring on ESI topics. The ESI liaison for Plaintiff shall be Patrick Madden and the ESI liaisons for Defendant shall be Shaina Stahl and Brad Barringer.  All productions of ESI by any Party or non-party shall be sent to the Parties' counsel of record, including the ESI liaisons.

## 4.    PRESERVATION

4.1  The Parties shall take reasonable and proportional steps to preserve reasonably accessible and discoverable information in their possession, custody or control.  The initial list of custodians shall be the individuals identified by name in the Parties' Rule 26(a) disclosures, including any supplements to those disclosures.  Either party may request additional custodians from the other, provided such a request is accompanied by a good-faith justification for their inclusion.  The Parties shall meet-and-confer regarding any additional custodians.   If the parties are unable to agree to custodians, the Parties shall promptly seek the Court's assistance. Once custodians have been identified and the Parties perform collections of those custodians, the Parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the Parties shall

preserve the non-duplicative discoverable information currently in their possession, custody or control.

### 5.    DOCUMENT AND DATA SOURCES

5.1   Where disputes arise concerning custodians or sources of ESI, the Parties shall promptly meet and confer.  If the Parties' disagreement persists after meeting and conferring in good faith, the Parties shall notify the Court of their unresolved dispute(s) and seek resolution from the Court in accordance with the Court's rules concerning discovery disputes.

### 6.    IDENTIFICATION OF RESPONSIVE ESI

6.1   The Parties agree that the Responding Party is best situated to evaluate the procedures, methodologies, and technologies appropriate for producing its own electronically stored information.  *See* The Sedona Principles, Third Edition, 19 SEDONA CONF. J. 1, Principle 6, 118–130 (2018). As such, a Party may use search terms, other objective delimiters and culling processes (such as e-mail domains, e-mail threading, De-NISTing, etc.), and/or technology-assisted review ("TAR") technologies as a means of limiting the volume of documents and ESI to be reviewed for responsiveness.  The Responding Party shall disclose the search terms applied and the objective delimiters and/or culling processes used.  However, if the Responding Party intends to use TAR, it shall disclose such intent to the Requesting Party and the Parties shall meet and confer on the specific methodology prior to the initiation of TAR-related review and production. The Requesting Party may request the application of additional search terms provided such a request is accompanied by a good-faith justification for each term, utilizing references to produced material where possible.  If the Responding Party objects to any of the additional terms, it shall provide a good-faith basis for its objection.[1]

---

[1] To the extent a Responding Party objects to proposed terms as burdensome or not proportional to the needs of the case, it shall provide sufficient hit count metrics to the Requesting Party to support its argument.

6.2  <u>De-Duplication</u>: If a Producing Party elects to de-duplicate, the Producing Party shall identify duplicates by the MD5 hash algorithm (or a reasonably equivalent alternative) to create and compare hash values for exact duplicates only. Other methodologies that are substantially different for identification of duplicates must be discussed with the Requesting Party and approved in writing before implementation.  For clarity, no Party should de-duplicate any emails unless they are identified as "family-level hash duplicate."

6.3  <u>E-mail Threading:</u> In order to reduce unnecessary volume in the review and production of e-mails, the Parties may utilize e-mail threading, which means in instances in which a group of e-mails are captured in an e-mail string, only the latest e-mail in the string will be produced along with all attachments included in the e-mail string.   The threaded email chain must be fully inclusive, *i.e.*, the produced email thread must include all the information in the individual constituent emails that the Producing Party will not produce (including, without limitation, clearly providing information concerning each constituent email's sender and recipients—including To:, From:, Cc: and Bcc: recipients and senders, the dates and subject information for each constituent email, and all text in each constituent email). Emails containing unique attachments not otherwise contained in the produced inclusive email shall also be produced along with their parent email. The Producing Party must also separately produce all side threads (*e.g.*, where a portion of the produced inclusive email gets forwarded to new (or a subset of the inclusive email's) recipient(s) generating a distinct thread). Emails suppressed under this paragraph need not be reflected on the Party's privilege log.

6.4  Each Party shall disclose within 21 days of execution of this agreement whether it is aware of any circumstances involving the loss or failure to preserve potentially relevant discovery materials, and the nature of the materials affected. To the extent a Party later becomes aware of the loss or failure to preserve potentially relevant discovery materials, it shall take steps to promptly notify the Requesting Party.

**7.   PRODUCTION FORMAT**

7.1    Production of ESI shall be encrypted and provided to the Requesting Party via physical media or secure file transfer site.  The production should be accompanied by a cover letter to the Requesting Party that identifies the Bates range of the production and provides a brief description of the nature or purpose of the production.

7.2    <u>TIFF/Native File Format Production</u>.  The Parties agree that all non-redacted versions of Excel spreadsheets (or similar spreadsheets created using a different software program, *e.g.*, Lotus 123 etc.), PowerPoint presentations (or similar documents created using a different software program), databases (*e.g.*, Access, Quickbooks, etc.), drawing files (*e.g.*, Visio, CAD, etc.), and audio and visual files (*e.g.*, Quicktime Movie, Windows Media Video, Voicemails), will be produced in native format.[2]  Such native files shall include the beginning Bates number of the document in the file name (*e.g.*, BEGDOC.xls) with the file path value for the native filename preserved in the "Native Link" metadata field. Documents produced in native format should be produced with a single-page TIFF placeholder endorsed the Prod Beg Bates and the following language on the placeholder: "Document produced in native format." All other documents will be produced as single-page Group IV TIFF black-and-white images with corresponding multi-page text, or in native file format if applicable, and necessary load files.  Native files, along with corresponding metadata, will be preserved.  TIFF images will be of 300 dpi quality or better.  A Party may make a good faith request that a document produced in black-and-white be re-produced in color or native, and the Parties will meet and confer regarding such a request.  The load files will include an image load file as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available.  In certain circumstances, variations to the

---

[2] The Parties also agree that no Party may request or seek to compel the production of ESI in native format on a wholesale basis, although the Producing Party retains the option to produce ESI in native file format.  Subsequent to the production of documents, however, the Requesting Party may request from the Producing Party that certain imaged files be produced in native format because the files are difficult to read in an imaged form or because the imaged form is not reasonably usable such as where the document requires color images to interpret the document's content.

production format specified in this Protocol may be necessary.  In such circumstances, the Parties will meet and confer regarding the production format.

7.3  <u>Metadata</u>.  No Party has an obligation to create or manually code fields that are not automatically generated by the processing of the ESI, that do not exist as part of the original metadata of the document, or that would be unduly burdensome or costly to obtain.  The Parties shall provide the following metadata fields for each document produced, to the extent they are reasonably available:

a)    AttachCount

b)    Author

c)    Confidentiality

d)    Custodian - All

e)    Custodian or Source

f)    Date/Time Created

g)    Date/Time Last Modified

h)    Date/Time Received

i)    Date/Time Sent

j)    DocType

k)    Email BCC

l)    Email CC

m)    Email From

n)    Email Subject

o)    Email To

p)    File Extension

q)      File Name

r)      File Size

s)      MD5 Hash Value

t)      Native Link *(if applicable)*

u)      Original Folder Path

v)      Prod Bates Beg

w)      Prod Bates Beg Attach

x)      Prod Bates End

y)      Prod Bates End Attach

z)      Redactions

aa)     Text Files

7.4    <u>Unitization</u>: In scanning hard copy documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records. The Producing Party shall take reasonable steps to both physically and logically unitize hard copy documents. For example, documents stored in a binder, folder, or similar container (each, a "container") shall be produced in the same order as they appear in the container. Similarly, pages that are stapled or clipped shall be produced as a single document and not multiple one-page documents. The Producing Party shall undertake reasonable efforts to, or have its vendors, logically unitize (i.e. use cues such as consecutive numbering, report titles, similar headers and footers, and other logical cues that indicate the pages belong together) hard copy documents that are not otherwise bound.

7.5    <u>Redacted Documents</u>: In the event a document is redacted, the full text should be replaced with OCR text that excludes the redacted material and identifies the basis for redaction. When a TIFF image is redacted, the TIFF image should show the word "redacted" where applicable and a production Load File field should be populated to indicate the document contains a redaction.  If a document is produced in redacted native format, the native file should show the

word "redacted" where applicable and a production Load File field should be populated to indicate the native file contains a redaction.

7.6 <u>Text Files</u>. Each document produced under this ESI Protocol shall be accompanied by a single, multipage text file containing all of the text for that document (as opposed to one text file per page of such document). Each text file shall be named using the Bates number of the first page of the corresponding production item. The text of each file shall be extracted directly from the native file. To the extent that is not technically possible (*e.g.*, the underlying native file is an image file), the text for each item shall be generated by applying OCR to the native file. The full text shall be provided on a document-level basis in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. Text files shall be provided in a "text" folder. To the extent that a document is redacted, the text files shall not contain the text of the redacted portions but shall indicate where the redactions were made (*e.g.*, with the notation "redacted").  Extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns, and rows.

7.7 <u>Attachments</u>: Email attachments and embedded files must be mapped to their parent document by the Bates number by including a "Beg Attach" field designating the beginning of each such attachment and "End Attach" field designating the end of each such attachment.  To the extent they are maintained together, all documents in a document family shall be consecutively Bates number stamped with the child documents produced immediately after the parent document.

7.8 <u>Password-Protected Files</u>: The Producing Party shall make reasonable efforts to ensure that all encrypted or password-protected documents are successfully processed for review and production under the requirements of this ESI Protocol, and the decrypted document is produced. To the extent such documents are not successfully processed, the Producing Party agrees to: (a) produce a slipsheet for each encrypted or password protected document that cannot be successfully processed indicating that the document cannot be decrypted; and (b) provide the required metadata for the document to the extent it can be reasonably extracted from the file in its encrypted form.

7.9  <u>Document Numbering</u>.  Each page of a produced document will have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document.  The Bates Number for each page of each document will be created so as to identify the Producing Party.

7.10 <u>Claims of Confidentiality</u>.  If the Producing Party produces ESI subject to a claim that it is protected from disclosure under a protective order or a confidentiality agreement entered into by the Parties, the Producing Party may electronically "burn" the specific level of confidentiality claimed onto each page of the document.  The confidentiality designation will be burned onto the document at a location that does not obliterate, conceal, or interfere with any information from the source document.  Failure to comply with this procedure shall not waive any protection of confidential treatment.

7.11 <u>Exhibit A.</u> To the extent the format for production of unstructured data is not addressed by this section, it shall be covered by Exhibit A.  Variations from the requirements of Exhibit A are permitted with the consent of the Requesting Party.  The Parties shall meet and confer regarding any disputes regarding production format.

## 8.    STRUCTURED DATA FORMAT

Structured data or reports from databases or applications will be produced in export or report form in a .csv file, Excel file, or .txt file (tab delimited, pipe delimited, etc.), or other usable format that is reasonable based on the nature of the data. The Parties will reasonably cooperate in the exchange of information concerning such databases and data sources. To the extent producing structured data proves unreasonably difficult, the Parties shall meet and confer to endeavor to mitigate the issue.

## 9.    ASSERTIONS OF PRIVILEGE

9.1  Pursuant to Fed. R. Civ. P. 26(b)(5) and Middle District Discovery (2021) at Sections III, VI and VIII, a Producing Party may redact or, to the extent necessary, withhold a document if it is protected by attorney-client privilege, the work-product doctrine, or any other applicable privilege.

9.2  To limit the cost of a privilege review and make document production more efficient, the Parties have agreed to adopt the following protocol with respect to handling responsive documents or ESI that may include privileged information.

> a)    <u>Communications with Outside Counsel.</u>  The Parties agree that no Party is required to list on a privilege log communications between a Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or with respect to information protected by Fed. R. Civ. P. 26, testifying experts, so long as such communications do not also include anyone who is not within the privilege.

> b)    <u>Outside Counsel Work-Product.</u> The Parties agree that no Party is required to list on a privilege log privileged materials or work product created or received by its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or with respect to information protected by Fed. R. Civ. P. 26, testifying experts.  This provision extends to the attachments of privileged or work product emails.

> c)    <u>Redacted Documents.</u>  Redacted documents need not be logged if (i) the reason for the redaction and any other information that would otherwise appear on a log is noted on the face of the document; and (ii) the bibliographic information (to, from, subject etc.) is not redacted.

9.3  Parties shall generate a listing of all other documents and ESI withheld or redacted for privilege in electronic spreadsheet format.

9.4  To the extent applicable, each Party's privilege log should provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and an indication of the privilege or protection being asserted.  The log will be populated with the following extracted metadata fields, to the extent providing this information will not destroy

privilege: Custodian, From, To, CC, BCC, Subject, File Name, File Extension, Date/Time Sent, Date/Time Created, Date/Time Last Modified.  In-house attorney names shall be designated with an asterisk; outside counsel names will be designated with a double asterisk.  An e-mail thread may be logged as a single entry to the extent the entire thread is claimed to be protected by the applicable privilege or protection.

9.5  Should a Requesting Party be unable to ascertain whether or not a document contained on the log is privileged or have reason to believe a particular entry on the log is responsive and does not reflect privileged information, the Parties shall meet and confer to attempt to cooperatively resolve the dispute. The Producing Party shall provide reasonable additional information for the Requesting Party to determine if the document has been properly withheld or redacted.

9.6  The Parties agree to take reasonable steps to prevent the inadvertent disclosure of privileged information.  However, the Parties acknowledge that, despite each Party's best efforts to conduct a thorough pre-production review of Documents, some Privileged Materials may be disclosed to the other Party during the course of discovery in this matter.  The Parties further agree that any privilege that may have been raised in documents produced in this matter, whether inadvertent or otherwise, is not waived as a result of disclosure of those documents in connection with this matter.  The fact of production of privileged information or documents by any producing party in this matter shall not be used as a basis for arguing that a claim of privilege or work product has been waived in any other proceeding. This provision shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

## 10.  GENERAL PROVISIONS

10.1 <u>Discoverability and Admissibility</u>.  This Protocol does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI except that documents

produced as they are kept in the ordinary course of business shall be deemed authenticated pursuant to Federal Rule of Evidence 901. Nothing in this Protocol shall be construed to affect the admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

      10.2 <u>Modification</u>. To the extent compliance with this Protocol imposes an undue burden with respect to any procedure, source, or other provision listed herein, the Parties shall promptly confer in an effort to resolve the issue. Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data.


DATED:                                       DATED:


_____      _____
 [COUNSEL FOR PLAINTIFF]       [COUNSEL FOR DEFENDANT]